# Horney, Appellant, *v.* Nixon.

*Theaters—Tickets—Contract—Trespass—Form of action.*

The proprietor of a theater is a private individual, engaged in a strictly private business, which, though for the entertainment of the public, is always limited to those whom he may agree to admit to it. There is no duty, as in the case of a common carrier, to admit every one who may apply and be willing to pay for a ticket, for the theater proprietor has acquired no peculiar rights and privileges from the state, and is, therefore, under no implied obligation to serve the public. When he sells a ticket he creates contractual relations with the holder of it, and whatever duties on his part grow out of these relations he is bound to perform, or respond in damages for the breach of his contract, if it is of that only that complaint can be made.

A theater ticket being a mere license to the purchaser which may be revoked at the pleasure of the theatrical manager, upon such revocation, if the person attempts to enter, or if, having previously entered, he refuses to leave upon request, he becomes a trespasser, and may be prevented from entering or may be removed by force, and can maintain no action of tort therefor. His only remedy is by an action on the contract to recover the money paid for the ticket and damages sustained by the breach of the contract implied by the sale and delivery of such ticket.

In an action against the proprietors of a theater it appeared that the plaintiff held two reserved seats for a particular performance. Before the evening of the performance the municipal authorities ordered certain end seats of aisles to be removed. This was done, and in the confusion resulting from the sale of seats thereafter, the seats of the plaintiff were sold to other parties. The plaintiff's two seats had been originally purchased in connection with six others, all to be used by one family. When the plaintiff and his family presented their coupons they were informed that they could not under the circumstances be given the seats called for. They were offered eight other seats farther back, or seats in two of the boxes. All of these were refused, and the party becoming noisy were invited to go into the corridor. Explanation was made to them of the cause of the trouble, and their money was tendered back to them. Plaintiff refused this, left the theater, and subsequently brought a suit in trespass for the price of the tickets, and for the inconvenience, annoyance, mortification and humiliation suffered by him. *Held*, that an action of trespass would not lie.

Argued March 20, 1905. Appeal, No. 356, Jan. T., 1904, by plaintiff, from judgment of C. P. No. 4, Phila. Co., March Term, 1904, No. 1600, on verdict for defendant in case of Wilbur Horney v. Samuel F. Nixon and J. Fred Zimmerman, trading as Nixon & Zimmerman. Before DEAN, FELL, BROWN, MESTREZAT and ELKIN, JJ. Affirmed.

Trespass for failure to supply seats at a theater reserved by tickets bought in advance. Before WILLSON, J.

The facts appear by the opinion of the Supreme Court.

The court gave binding instructions for defendant.

Verdict and judgment for defendant. Plaintiff appealed.

*Error assigned* was in giving binding instructions for defendant.

*Ulysses S. Koons*, with him *W. H. G. Gould* and *Henry E. Lallou, Jr.*, for appellant.—The doctrine of revocable license and its inadequate measure of damages, in contract, has not appealed to the spirit of equity of our courts and has been flatly repudiated: Drew v. Peer, 93 Pa. 234.

It has always been the law in this state that purchasers of reserved seats in theaters have the right to the exclusive possession of the designated seats during the performance of that particular evening: Commonwealth v. Powell, 10 Phila. 180; 1 Harvard Law Review, 24; McGoverney v. Staples, 7 Albany Law Journal, 219.

The gravamen of the offense in both the car and the theater cases, being the trespass upon rights growing out of the contract, the following cases in trespass are decidedly in point on the question of damages in the case of an ejection whether by force or not: Laird v. Traction Co., 166 Pa. 4; Perry v. Ry. Co., 153 Pa. 236; R. R. Co. v. Spicker, 105 Pa. 142; R. R. Co. v. Bambrey, 2 Mona. 109; Duggan v. R. R. Co., 159 Pa. 248.

*Arthur Straus Arnold*, with him *J. Siegmund Levin*, for appellees.—The conducting of a theater is a purely private enterprise, and the law does not by implication impose upon the proprietor thereof a mandatory requirement to serve the public: Chitty on Pleading, vol. I, page 153; Rex v. Ivens, 7 C. & P. 213; Railway Co. v. Williams, 55 Ill. 185; Coger v. Packet Co., 37 Iowa, 145; Purcell v. Daly, 19 Abbott's New Cases, 301; District of Columbia v. Saville, 1 McArthur, 581.

The rules of law governing the relations between the public and persons engaged in public trades or employments, upon whom, by reason of the nature of their occupation, the law

imposes a duty to the public, have no application to a case involving only the liability of the proprietor of a place of amusement to his patrons : People v. R. R. Co., 28 Hun, 543 ; Sandford v. R. R. Co., 24 Pa. 378 ; Pittsburg, etc., Ry. Co. v. Lynn, 123 Pa. 140 ; McCall v. Forsyth, 4 W. & S. 179 ; Frink v. Potter, 17 Ill. 406 ; Nevin v. Pullman Palace Car Co., 106 Ill. 222.

A theater ticket is a revocable license, and the only remedy of a purchaser denied the enjoyment thereof, is an action on the contract for such damages as are the immediate consequences of the breach of contract : Wood v. Leadbitter, 13 Meeson & Welsby, 838 ; McCrea v. Marsh, 78 Mass. 211 ; Burton v. Scherpf, 83 Mass. 133 ; Mendenhall v. Klinck, 51 N. Y. 246 ; Pearce v. Spalding, 12 Mo. App. 141 ; Johnson v. Wilkinson, 139 Mass. 3 (29 N. E. Repr. 62) ; Purcell v. Daly, 19 Abbott's N. C. 301 ; Oxford v. Leathe, 165 Mass. 254 (43 N. E. Repr. 92) ; Kerrison v. Smith L. R. (1897), 2 Q. B. D. 445 ; Collister v. Hayman, 71 App. Div. 316 (75 N. Y. Supp. 1102) ; Greenberg v. Turf Ass'n, 140 Cal. 357 (73 Pac. Repr. 1050) ; Waterman on Trespass, page 160 ; Washburn Real Prop., paragraph 845.

OPINION BY MR. JUSTICE BROWN, October 9, 1905 :

Lewis J. Somers, the father-in-law of the plaintiff, purchased from the Columbia Field Club eight tickets for a theatrical performance to be given on February 26, 1904, at a theater in the city of Philadelphia under the management of the appellees. They had issued a certain number of tickets to the club, to be sold by it, as the performance was to be for its benefit. After the tickets had been issued to it a fire commission, appointed by the mayor of the city, directed the aisles of the theater to be widened as a measure of greater safety to the public by removing the end seat on each row of the center section. The eight tickets purchased by Somers were in the fifth row of this section and were numbered from 1 to 8, No. 1 being for the one along the aisle. Two of these eight tickets—Nos. 3 and 4—were purchased by plaintiff from his father-in-law. The order of the fire commission led to some confusion in connection with the sales of seats, as the appellees did not know who had purchased tickets from the club before

the order was complied with, but arrangements were made to issue other tickets to the holders of those for the seats along the aisles which had been removed.   By some oversight all of the eight seats called for by the tickets purchased by Somers were resold, and when he and his family presented their coupons to the usher they were informed that they could not, under the circumstances, be given the seats called for.   They were offered eight together elsewhere, as they insisted upon being seated as a family, but these were declined as being too far back.   They were then offered seats in two of the boxes, but these were refused, on the ground that, as they had come as a family, they insisted upon sitting together, and in the seats called for by their coupons.   In view of the alterations made in pursuance of the order of the fire commission it was impossible for the managers of the theater to give the family these eight seats, but, according to plaintiff's own testimony, they courteously offered to seat them elsewhere.   The party, however, refused every proposition and became noisy, to the annoyance of those witnessing the performance, which had commenced.   They were told that they could not continue discussing the matter inside of the theater and were directed to go outside, where, according to the testimony of the treasurer of the appellees, they were tendered back the money they had paid for their tickets.   After having so declined every offer to give them other seats to witness the performance, they left the theater, and the plaintiff shortly afterwards brought this action to recover the price of the tickets purchased by him, and " for the inconvenience and annoyance and mortification and indignity and humiliation suffered " by him.   Under the foregoing facts the court below directed a verdict for the defendants, for the reason that there could be *no recovery in trespass*—the form of action adopted by the plaintiff—and the single question before us is the correctness of this ruling.   It was so manifestly correct that the judgment might well be affirmed without saying more.

The case as presented by the plaintiff has not a single tortious feature.   He had purchased a ticket, calling, on its face, for a seat which he insisted on having, and it was the duty of the defendants to give it to him ; but their failure to perform that duty was simply a failure to perform their contract with

the holder of the ticket, and for such failure, the remedy, as in any other simple breach of contract, is in assumpsit for damages for the breach. The confusion resulting from the change in the rows of seats, which followed the order of the fire commission, was the excuse given for not being able to furnish the family the seats called for by the tickets, and it ought to have been accepted by any reasonable person. The plaintiff, if not willing to take any of the other seats offered to him, ought to have been content to have his money refunded.

In support of the contention that the appellant has a right of action in trespass, decisions in cases of common carriers are cited, in which trespass was held to have been the proper form of action for refusal to carry passengers, or for unlawfully ejecting them without force or violence. But the difference between the duty of a common carrier and that of a theater proprietor has been wholly overlooked. That of the former is absolute to carry whoever may wish to be carried. It is a duty growing out of no contract, but rests at all times on the common carrier in return for the franchises and privileges conferred by the state. If, in violation of this duty, it refuses to receive a passenger, or unlawfully ejects him from one of its conveyances, trespass will lie upon the disregard of the implied obligation to serve the public, or the tort may be waived and assumpsit maintained for a breach of the contract of carriage, if one has been entered into. The rule is thus stated in Vol. 15, Ency. of Pleading & Practice, 1121 : "It may be stated as an abstract proposition that where the duty of a common carrier to a passenger is not one which is implied by law by reason of the relation of the parties, but depends solely upon the fact that it has been expressly stipulated for, the remedy is in contract and not in tort; but where the duty is implied by law by reason of the relation of the parties, or where the passenger sustains an injury by reason of the breach of a duty which the railroad owes to the public in general, the remedy is in tort." "When the gist of the action is a breach of duty and not of contract, and the contract is not alleged as the cause of action, and when from the facts alleged, the law raises the duty by reason of the calling of the defendant, as in the case of innkeepers and common carriers and the breach of duty is solely counted upon, the rules applying to actions ex delicto determine

the rights of the parties: " Frink v. Potter, 17 Ill. 406. " The liability of a carrier of passengers is a subject which has become of great practical importance since the introduction of railroads, and the subject of the measure of damages for breach of contract of carriage of a passenger has been much discussed. The relation between carrier and passenger is more than a mere contract relation; indeed, it may exist in the absence of contract. It is clear that any person rightfully on the cars of a railway company is entitled to protection by the carrier, though he is a free passenger. Any breach of this duty owed by the carrier to the passenger would seem to be a tort: recovery may be had either in an action of tort or in an action for breach of the contract. The contract made by a common carrier of passengers (and we shall see that the same is true of contracts made by all incorporated telegraph companies) is not simply a voluntary engagement such as an ordinary contract inter partes, but an agreement made in pursuance of an obligation towards all the world imposed either by his mere status as common carrier, or under his charter, or both. In other words, it is a contract which he is under a duty to make, and under a duty to perform, so that a breach is not a mere breach of contract, but also, as we have said, a tort: " 2 Sedgwick on Damages, (8th ed.), sec. 859.

The proprietor of a theater is a private individual, engaged in a strictly private business, which, though for the entertainment of the public, is always limited to those whom he may agree to admit to it. There is no duty, as in the case of a common carrier, to admit every one who may apply and be willing to pay for a ticket, for the theater proprietor has acquired no peculiar rights and privileges from the state, and is, therefore, under no implied obligation to serve the public. When he sells a ticket he creates contractual relations with the holder of it, and whatever duties on his part grow out of these relations he is bound to perform, or respond in damages for the breach of his contract, if it is of that only that complaint can be made. Such is just the situation here. A courteous explanation was made why the contract with the plaintiff as the holder of the ticket issued by the defendants could not be specifically performed; other seats in different parts of the house were offered to him and the rest of the family, which

could have been occupied by them together as one party, but were declined; seats in the proscenium boxes were refused, because the party would be separated, and even after all this they were not evicted from the building, but simply told that their loud discussion of what they conceived to be the great wrong done them could not be carried on inside the theater, to the annoyance of those who were witnessing the performance; and, without rudeness or violence, they were directed to go into the foyer, where they continued to discuss the situation. They could have had seats at any time, but would take none except those called for by their tickets.

The allegation of the plaintiff, in his attempt to make out a case of trespass against the appellees, is that, by their conduct, he was unlawfully ejected from the theater, to his mortification, indignity and humiliation. The proof is just to the contrary, and shows nothing but a simple breach of a simple contract, resulting from a cause which was explained to him and which ought to have been regarded as unavoidable. But he and some of the rest would listen to nothing but what their tickets called for. If the contract with him was broken, he is entitled to nothing more than the actual damages for the breach, and these, according to the testimony of the treasurer of the appellees, were tendered to him.

In affirming this judgment nothing more would be said but for the citation of Drew v. Peer, 93 Pa. 234, as authority for the right of the plaintiff to maintain trespass. There is no analogy between the two cases. Peer and his wife, two colored persons, purchased tickets for reserved seats in the theater of the defendant. On the evening of the performance they passed through the street door and were within a few feet of the ticket taker at the entrance to the orchestra circle when the man who was taking the tickets cried out "Clear them niggers out," and they were violently ejected from the building. In an action in case a recovery was had and sustained, and it was said by Sterrett, J. : "Whether the tickets conferred merely a license or something more is immaterial. If they gave only a license to enter the theater and remain there during the performance, it is very clear that the agents of the defendant had no right to revoke it as they did, and summarily eject Peer and his wife from the building, in such manner as

to injure her.  We incline to the opinion, however, that as purchasers and holders of tickets for particular seats they had more than a mere license.  Their right was more in the nature of a lease, entitling them to peaceable ingress and egress, and exclusive possession of the designated seats during the performance on that particular evening."  All that was decided was that the defendant had no right to revoke the license in the manner she did and violently and rudely eject the plaintiff and his wife from the theater.  The suit was for damages resulting from their rude ejection, and what is said about the tickets being more than a mere license is to be regarded as simply obiter dictum.  Even as such it is certainly not in accord with the authorities in this country and in England. " Licenses which are given by the sale of tickets to theatres and other places of amusement are revocable : " Cooley on Torts (2d ed.), p. 306.  " A theatre ticket being a mere license to the purchaser which may be revoked at the pleasure of the theatrical manager, upon such revocation, if the person attempts to enter, or if, having previously entered, he refuses to leave upon request, he becomes a trespasser, and may be prevented from entering or may be removed by force, and can maintain no action of tort therefor.  His only remedy is by an action on the contract to recover the money paid for the ticket and damages sustained by the breach of the contract implied by the sale and delivery of such ticket : " Vol. 21 Ency. of Pleading & Practice, 647.  Among the cases sustaining this are Wood v. Leadbitter, 13 M. & W. 838 ; McCrea v. Marsh, 78 Mass. 211 ; Burton v. Scherpf, 83 Mass. 133 ; Pearce v. Spalding, 12 Mo. App. 141 ; Johnson v. Wilkinson, 139 Mass. 3 ; Greenberg v. Western Turf Assn., 140 Cal. 357.  In the light of these and other authorities a theater ticket is to be regarded as a mere license, for the revocation of which before the holder has actually been given his seat, and has taken it, the only remedy is in assumpsit for the breach of the contract.

Judgment affirmed.