## Jackel, Appellant, *v.* Nixon & Zimmerman Amusement Company.

*Contract—Theater—Theatrical contract—Selling tickets.*

An unincorporated association entered into a contract with the proprietors of a theater for a benefit. It was agreed that if the association sold a certain number of tickets it should be entitled to retain out of the proceeds a certain percentage, returning the balance to the theater company. After the association had sold a sufficient number of tickets to entitle them to the percentage of the proceeds agreed upon, they were notified that the benefit had been canceled, as the theatrical company billed refused to play for benefits. They were instructed to get in all the tickets and return them to the theater at the earliest possible date. They were further told that they would be refunded the price of printing, or that the benefit would be transferred to some other attraction. The association turned into the theater an account of tickets sold, offered to return those unsold, and tendered to the theater company the full contractual share of the proceeds of the sales made before the contract was declared canceled. This settlement was de-

clined. Subsequently the association voluntarily took up all the tickets previously sold, and returned the money in their hands to the respective purchasers. They then sued the proprietors of the theater for the percentage of the proceeds stipulated for in the contract. *Held,* (1) that the association in distributing the fund in their hands stripped themselves of every advantage gained by their previous partial performance of the contract, and deliberately destroyed the fund which was to be the source and means of payment; (2) that the association was not entitled to recover.

Argued Dec. 7, 1906.   Appeal, No. 192, Oct. T., 1905, by plaintiffs, from judgment of C. P. No. 5, Phila. Co., Dec. T., 1902, No. 3,160, for defendant non obstante veredicto in case of J. M. Jackel et al. v. Nixon & Zimmerman Amusement Company. Before RICE, P. J., PORTER, HENDERSON, MORRISON, ORLADY, HEAD and BEAVER, JJ. Affirmed.

Assumpsit to recover percentages on a contract to sell theater tickets.   Before RALSTON, J.

At the trial the court gave binding instructions for plaintiff and the jury returned a verdict for plaintiff for $93.00.   Subsequently judgment was entered for defendant non obstante veredicto.

*Error assigned* was in entering judgment for defendant non obstanto veredicto.

*Charles F. Linde,* for appellant.

*Arthur S. Arnold,* for appellee.

OPINION BY HEAD, J., February 25, 1907 :
Upon a review of the entire case as it was presented at the trial, the learned court below entered judgment for the defendant non obstante veredicto.

The plaintiffs, an unincorporated club or society of some sixty members, base their claim to recover on an arrangement for a benefit performance, at a theater owned or controlled by the defendants, which arrangement was evidenced by a writing dated September 12, 1902, and signed by the plaintiffs. It was in form a receipt for tickets delivered to the plaintiffs, to be by them sold, and set forth the prices at which they were to be

sold and the extent and manner of payment of the compensation that was to reward the plaintiffs for their services in selling them.

Its material provisions are as follows, viz : " Received the following tickets for our benefit on Wednesday November 19, 1902, at the Park Theater.    We, the undersigned, hereby promise and legally bind ourselves to sell only at prices given below, to accept 50 per cent. of the proceeds as our share.    If, however, we should fail to sell one hundred dollars worth of tickets, we shall take but 25 per cent. as our share of the proceeds ; and if we fail to sell fifty dollars worth of the tickets, we further agree to hand full amount of sales to the said Park Theater and to forfeit our share thereof.    We also pledge ourselves to deliver to Park Theater its share of money, together with all unsold tickets at 11 A. M. Nov. 15th, 1902."

It is manifest, therefore, that plaintiffs were authorized to make lawful sales of the tickets and if any bona fide purchaser of a ticket was afterwards denied admittance to the theater, at the time and for the performance therein designated, he could recover from the defendants the price paid with any additional expense fairly incurred by reason of his purchase.    But this would be the limit of his right as a ticket holder : Horney v. Nixon, 213 Pa. 20.

On October 11, more than a month before the date fixed for the benefit performance, the defendants' manager wrote to the plaintiffs as follows : " I regret to tell you that your benefit has been cancelled, the ' Four Cohens ' refusing to play to benefits. You will, therefore, please get in all your tickets and return them to this office at the earliest possible date.    We will refund your price of printing therefor or transfer your benefit to some other attraction."    It is difficult to say, from the testimony of the plaintiffs, whether sales of tickets were stopped at once on the receipt of this letter or continued until October 20, the date of the first meeting of the club following its receipt.    Construing the evidence in the light most favorable to the plaintiffs we may assume that the sales were promptly stopped. We may also assume, in fairness to the defendants, that their action in canceling the benefit for the particular evening and attraction previously agreed on, was not capricious or arbitrary, but brought about by an exigency difficult if not impossible

for them to control.  Still it was their duty to have foreseen it or provided against it, in their tickets and contract, if they expected to be relieved from any liability to ticket holders or to those who, in performance of the contract, had sold the tickets and thus earned the compensation therein specified. When the further performance of the contract was thus prevented by the concellation notice of the defendants, there had been created, by the efforts of the plaintiffs down to that time, a fund of $186.  This fund was the source from which their compensation was to come, and, under the plain terms of the contract, their right was to retain fifty per cent of that fund, which would be the full measure of their compensation.  They were not bound to adopt the suggestion contained in the defendant's letter and take up the sold tickets unless they chose to do so on the conditions therein named, that is to say, unless they were willing to accept the return of their money advanced for printing, or to have their benefit transferred to another attraction.  They were at liberty to stand upon their contractual rights and retain the compensation they had earned, leaving to the defendants the duty of satisfying whatever demand could lawfully be made by the holders of the tickets.  But it would seem as if, logically and reasonably, they must pursue one or the other of the two courses thus indicated.  At first they appear to have adopted the latter because, beyond stopping the further sales of tickets, they took no notice of the letter of cancellation.

On November 15, the day fixed in the contract for settlement, they presented themselves at the office of the defendants, turned in their account of tickets sold, offered to return those unsold, and tendered to the defendants their full contractual share of the proceeds of the sales made before the contract was declared canceled.  The settlement was declined.  The plaintiffs had thus clearly rejected the suggestion of the defendants' letter as to taking up the sold tickets and accepting something else in lieu of the benefit originally arranged, and just as clearly affirmed their intention to stand upon their contractual rights as they then existed.  To accentuate this position they then gave notice that the holders of tickets would present themselves at the time named and demand the privileges called for by the tickets.  They did appear in considerable numbers and

were denied admittance, whereby the defendants assumed, towards these ticket holders the liability hereinbefore referred to.

Had the plaintiffs maintained the position thus taken it is difficult to see how, in any action brought by the defendants to recover the fund derived from the sales, they could have been deprived of the fruits of their partial performance of their contract. But some time later the plaintiffs, without any legal or contractual obligation requiring them so to do, voluntarily determined to take up all the tickets previously sold and return the money in their hands to the respective purchasers. By so doing they stripped themselves of every advantage gained by their previous partial performance of the contract. They deliberately destroyed the fund which the contract provided was to be the source and means of payment. With the compensation contemplated by the contract securely in their own grasp, protected there by every line and obligation of the contract, they chose to throw it away and now seek to found, on that same contract, a totally different right of recovery, never in the contemplation of the contracting parties.

After a patient examination of the record, including all of the evidence, we are unable to view the case in any other light than as it was regarded by the learned trial court. The assignment of error is overruled and the judgment affirmed.