# MARRONE *v.* WASHINGTON JOCKEY CLUB OF THE DISTRICT OF COLUMBIA.

---

DAMAGES; CONSPIRACY; FALSE IMPRISONMENT; RACE TRACKS.

1. In an action against a jockey club and its stewards for damages by a horse owner who had entered his horse for a race, and who had been refused admission to the track on the ground that he had "doped" his horse, as shown by an examination of the horse, made by the association's veterinary surgeon, and in which it was charged by the plaintiff that the defendant's stewards had conspired together to ruin defendant's reputation, proof by the plaintiff that the horse was not doped is not sufficient to support the charge of conspiracy, as it tends to prove nothing more than that the veterinary surgeon was mistaken.

2. A charge of false imprisonment cannot be predicated upon the action of the officers of the jockey club in refusing admission to its track to the holder of an admission ticket, and preventing him from entering the grounds, when no more force was used to prevent him from so doing than was necessary.

3. Theaters, race tracks, circuses, private parks, and other places of amusement and entertainment, in the absence of statutory regulation or restriction as to the manner in which they shall be conducted, are entirely under the control of the proprietor or manager, and he may exclude or admit whomsoever he chooses; and when he revokes the license granted by the sale of a ticket of admission, the ticket holder's

only remedy is for breach of contract, which will entitle him to re-
cover the amount paid for the ticket and necessary expense incurred
in attending the performance. *Quære*, whether in such an action the
license can be revoked after the ticket holder has taken the seat called
for by his ticket.

No. 2019.   Submitted March 4, 1910.   Decided April 5, 1910.

HEARING on an appeal by the plaintiff from a judgment of
the Supreme Court of the District of Columbia upon a verdict
directed by the court in an action for damages against a jockey
club and its stewards, by the holder of a ticket of admission,
who was refused admission to the track of the jockey club.

*Affirmed.*

The facts are stated in the opinion.

*Mr. George A. Prevost* and *Mr. Lorenzo A. Bailey* for the
appellant.

*Mr. A. S. Worthington* and *Mr. Charles L. Frailey* for the
appellees.

Mr. Justice VAN ORSDEL delivered the opinion of the Court:

This cause comes here on appeal from a judgment of the
supreme court of the District of Columbia upon a verdict
directed by the court in favor of the appellees, the Washington
Jockey Club of the District of Columbia, a corporation, S. S.
Howland, Henry J. Morris, and Samuel Ross, defendants be-
low.   For convenience, the appellant and appellees will be re-
ferred to hereafter as plaintiff and defendants, respectively.

It appears that the plaintiff, Joseph Marrone, at the fall meet-
ing, 1907, of the defendant association at the Bennings race
track in this District, entered a certain horse, named St. Joseph,
to take part in the races.   The individual defendants, other than
the Jockey Club, were stewards, and had charge of the grounds
and the meetings.   On November 25th, the plaintiff purchased

a ticket of admission to the grounds, containing the following restrictions indorsed on the back thereof:

"The purchaser or holder of this ticket or badge of admission accepts the same and is admitted to the grounds of the association upon the following expressed conditions:

"1. That he will not violate any provision of any statute prohibiting pool selling, bookmaking, or other gambling.

"2. That he will comply with and obey all the requirements, rules, and regulations prescribed by the association.

"3. That upon a breach of any of the above provisions, he will, at the request of any officer of the association, immediately leave the grounds, and the decision of such officer that such breach has occurred shall be conclusive.

"4. That upon failure to comply with such request, he may be removed upon the order of any officer of the association without any reason being given therefor.

"5. That he expressly waives all claims of any kind against the association, or any officer thereof, for such expulsion. No person who has been ruled off the grounds of the association can be admitted by this badge."

Plaintiff presented his ticket at the gate, where he was refused admission, the gateman calling to his assistance an officer of the association. The officer informed the plaintiff that the stewards had ruled him off the track for "doping" his horse, and that he would not be allowed admission to the grounds. The officer offered to return to plaintiff the amount of money he had paid for his ticket, which offer was refused. Plaintiff returned the succeeding day, November 26th, and bought another ticket, which he succeeded in placing in the ticket box at the entrance to the grounds. He was again refused admission, and the same officer who had been called on the former occasion led him away from the entrance into the street.

It also appears that on November 23d, immediately after a race in which plaintiff's horse St. Joseph took part, the veterinary surgeon in the employ of the defendants examined the horse, and found that it had been given a stimulant. Shortly thereafter, plaintiff was informed by the stewards that his horse

had been "doped," and that they were going to take his badge away from him. Plaintiff offered to pay the expense of having two or three disinterested veterinarians examine the horse, and, if necessary to protect his reputation, to have it killed and examined, also agreeing to sign a paper releasing the defendants from all liability for its value.

The amended declaration, after a somewhat extended preamble, alleges, in substance, that, on November 23, 1907, "the defendants Howland, Morris, and Ross, acting as such stewards, under the direction of the defendant corporation, in control and having the management of its affairs, conspired together with other persons whose names are to the plaintiff unknown, with intent to destroy the plaintiff's good reputation, as aforesaid, and to prevent horses to be produced by him from competing in such trials, as aforesaid, at said Bennings track or at other tracks, and to prevent the plaintiff from witnessing such trials at such Bennings track or at other tracks, and to humiliate and injure him in his person, his feelings, and his reputation. And the plaintiff further avers that on, to wit, the 26th day of November, 1907, in pursuance of the conspiracy and intent aforesaid, and in the presence of a great multitude of people at said Bennings track, the said defendants, by their agents and employees, whose names are to the plaintiff unknown, and acting on behalf and under the direction of the defendants, unlawfully and forcibly prevented the plaintiff from entering said inclosure to witness the trials then and there being conducted, as aforesaid, and with force and arms did assault and beat the plaintiff, and falsely and maliciously, as a pretended justification therefor, publicly charge that the plaintiff had, on or about the 23d day of November, 1907, 'doped' said horse St. Joseph, and other wrongs to the plaintiff then and there did, by means whereof the plaintiff was greatly injured in his person, his feelings, and his reputation." The declaration contains a second count alleging, in substance, the refusal of the defendants to permit him to enter the grounds on the 25th of November, and alleging an assault upon the plaintiff, and that he was then and there beaten and ill-treated and im-

prisoned for a great length of time. The third count alleges the refusal of the defendants to admit plaintiff to the grounds on the 26th day of November, and that he was again assaulted in the manner set forth in the second count.

It would be somewhat difficult to gather from this declaration on just what the plaintiff relied to establish his right to recover, had it not been cleared up at the trial below. It was there conceded by counsel for plaintiff that his action, as to the first count of the declaration, was based upon a conspiracy entered into by the stewards of the defendant association to charge plaintiff with "doping" his horse, and to rule him off the track, for the purpose of ruining his reputation; and that, pursuant to this conspiracy, they refused to admit him to the races upon presentation of a ticket of admission at the gate. In support of the allegation of conspiracy, the plaintiff offered to prove that his horse on the occasion in question was not "doped," and this was all the proof which plaintiff offered to submit in support of the allegation of conspiracy. This fact, if established, was, of itself, insufficient to prove anything more than that the defendant's veterinary surgeon was mistaken in his diagnosis of the horse. It would not constitute evidence from which conspiracy could even be inferred. Even if the horse was not "doped," we must assume that the veterinarian acted honestly. The burden of proving the existence of a conspiracy was upon the plaintiff. To establish the charge, it was incumbent upon him to produce evidence of declarations and acts of the defendants showing, or at least tending to show, a malicious, concerted movement on their part to have plaintiff wrongfully charged with "doping" his horse, in order that an opportunity might be afforded to have him ruled off the track and prevented from coming upon the grounds. Having established the conspiracy, the injury to his reputation might, to some extent, be inferred in estimating damages. But no such evidence was offered, the sole proof tendered being that the horse was not "doped," the only conclusion from which would be that the veterinarian was mistaken when he stated that the horse had been given a stimulant.

With the question of conspiracy entirely eliminated, the case resolves itself down to the right of the defendant association to exclude plaintiff from its grounds. It was conceded at bar that no more force was used at the gates in preventing the plaintiff from entering the grounds than was necessary. With this admission, there is no necessity for our consideration of the question of false imprisonment, as alleged in the second and third counts of the declaration. It is generally held that a ticket of admission to an entertainment conducted under private ownership and supervision is a revocable license, and that no action will lie in tort for the mere ejecting from such place of a person who presents himself for admission armed with a ticket purchased in the usual manner. In the early case of *Wood* v. *Leadbitter,* 13 Mees. & W. 838, 16 Eng. Rul. Cas. 49, it was held that a ticket purchased to witness races was a mere revocable license, and that no action for damages would lie for the ejection of the holder from the grounds. In that case, it was claimed that the plaintiff had not been guilty of any misconduct. The rule there announced has been generally followed in this country. In *Horney* v. *Nixon,* 213 Pa. 20, 1 L.R.A.(N.S.) 1184, 110 Am. St. Rep. 520, 61 Atl. 1088, 5 A. & E. Ann. Cas. 349, it was held that an action of trespass on the case will not lie against a proprietor or manager of a theater for refusing to permit the purchaser and holder of a ticket to occupy the seat called for by his ticket, and that the ticket was a mere license, which could be revoked before the party took his seat.

The rule as to places of amusement is entirely different from that of utilities chartered and created by law for the accommodation and benefit of the public. For example, it is undoubtedly true that anyone presenting himself for transportation on a railway train is entitled, upon paying his fare, to be carried, unless there is something in his conduct when he presents himself which justifies his exclusion. On the other hand, theaters, race tracks, circuses, private parks, and places of amusement and entertainment, in the absence of some statutory regulation or restriction as to the manner in which such

private enterprises shall be conducted, are entirely under the control of the proprietor or manager, and he may exclude or admit whomsoever he chooses.

The right given by the purchase of a ticket of admission to enter such places is a mere license that may be revoked at the will of the proprietor or his agents. The reason for granting such wide latitude is manifest. Anyone, however acceptable, may purchase a ticket and deliver it to one most objectionable, whose presence would not only be a reflection upon the respectability of the place, but work great injury and loss to the owner by driving away desirable patronage. The law imposes no duty upon the proprietor as to whom he shall give or refuse admission. It presumes that his own interest will assure proper treatment to those whom he may invite, by advertisement or otherwise, to his place of entertainment or amusement, but there is no rule for his guidance except his own judgment and sense of propriety. He may exclude one because he is objectionable to the patrons of his place; he may deny another admission because his dress or personal appearance is such as to attract attention from the performance, or interfere with its progress in the manner he desires to have it conducted, and he may refuse another, as in the present case, because of alleged objectionable conduct on a former occasion. All these matters are exclusively within the control of the proprietor, and when he revokes the license granted by the sale of the ticket, the ticket holder's only remedy is for breach of the contract, which would entitle him to recover the amount paid for the ticket and the necessary expenses incurred in attending the performance. *People ex rel. Burnham* v. *Flynn,.* 189 N. Y. 180, 82 N. E. 169, 12 A. & E. Ann. Cas. 420; *Johnson* v. *Wilkinson,* 139 Mass. 3, 52 Am. Rep. 698, 29 N. E. 62; *Pearce* v. *Spalding,* 12 Mo. App. 141; *Greenberg* v. *Western Turf Asso.* 140 Cal. 357, 73 Pac. 1050. In such a case the proprietor is not required to either justify his action or give a reason for revoking the license.

It follows, therefore, that, in the absence of an unlawful assault or false imprisonment, as alleged in the second and third

counts of the declaration, an action in tort will not lie for the mere refusal to admit plaintiff to the grounds of the defendant association. Plaintiff's attempt to establish a case of trespass against the defendants for refusing him admission to the grounds, to his mortification, indignity, and humiliation, must, therefore, fail.

It is intimated in the decisions of some of the courts that a distinction may exist, for example, as to theater tickets, between a case where the license is revoked before the holder takes the seat called for by the ticket, and where he is given notice of revocation and ejected after he has occupied the seat. *Burton* v. *Scherpf,* 1 Allen, 133, 79 Am. Dec. 717. It is, however, unnecessary to consider this distinction, if any in fact or in law exists, since in the case at bar the plaintiff had not entered the defendant's grounds when the license was revoked.

The judgment is affirmed, with costs, and it is so ordered.

*Affirmed.*

An application by the appellant for a writ of error to the Supreme Court of the United States was allowed April 18, 1910.