## LEE SHUBERT v. NIXON AMUSEMENT COMPANY AND FLORENZ ZIEGFELD, Jr.

Submitted July 7, 1911—Decided May 24, 1912.

1. At common law the sale of a theatre ticket created only a personal license to enter the theatre and enjoy the performance for which such ticket is sold, using the seat assigned, if any. Such license is revocable at the will of the proprietor of the theatre, who may lawfully require the licensee to leave the theatre without assigning any reason therefor, and in case of refusal, eject such licensee without unnecessary force; and in case of such revocation and ejection no action in tort will lie, but only an action in contract for the price of the ticket and incidental damages arising out of breach of the contract of sale of the ticket.

2. *Wood* v. *Leadbitter*, 13 *M. & W.* 838, followed and approved.

In tort. On demurrer to pleas.

The suit was in tort for damages for being ejected from a theatre. By the first count of the declaration it is averred that the Nixon Amusement Company was the lessee of a certain theatre and defendant Ziegfeld was the manager of a play that was being produced thereat; that plaintiff purchased tickets for four orchestra seats and paid for them, entitling himself and three of his friends to occupy said seats at a certain specified performance; that he and his friends went to the theatre and gave up their tickets, retaining the seat checks, entered the theatre and occupied the seats, and while they were so occupying them and before the curtain rose for the performance, the said Ziegfeld and the defendant company by its agents wrongfully and maliciously did order and compel plaintiff and his guests to leave the theatre, and thrust them out in the presence of divers persons, whereby they were deprived of the right to witness the performance, and plaintiff was deprived of his property in the tickets, and was also injured in his good name and credit, and did suffer great mortification and embarrassment of mind and feelings

and was subjected to the disdain and contempt of the people, &c.

The second count sets up a similar state of facts but invokes the Civil Rights act of May 10th, 1884. *Comp. Stat.,* p. 1442.

The demurrer is to the second plea, which sets up in defence to the entire declaration that before and at the time when, &c., the defendant tendered to the plaintiff the money he had paid for the tickets in question, and did request him and his friends to leave the seats occupied by them and to depart from the theatre, but that plaintiff and his friends refused to comply with this request, whereupon defendants caused them to be put out of the theatre, using no unnecessary force, as it was lawful for them to do. The specific causes of demurrer to this plea are that the plea, and the tender set up therein, constitute no justification for the ejection complained of.

Before GUMMERE, CHIEF JUSTICE, and Justices PARKER and VOORHEES.

For the plaintiff, *McCarter & English.*

For the defendants, *Riker & Riker.*

The opinion of the court was delivered by

PARKER, J. The defendants first attack the declaration as insufficient in law, as under this demurrer they are entitled to do. So far as concerns the first count, the objections now made to it were previously passed upon in this cause when defendants demurred to the declaration and their demurrer was struck out. They should not again be considered. We are of opinion, however, that the second count is bad. Assuming that for a violation of the Civil Rights act, *ubi supra,* a civil action for damages will lie as well as the penal action provided in that act, the declaration is wholly wanting in any averment that plaintiff was ejected because of race, color, or previous condition of servitude, or for any cause or reason

not "by law applicable to citizens of every race and color, and regardless of any previous condition of servitude." Hence no violation of the act is made to appear. This results in the elimination of the second count, and the plea stands as a plea to the first count only. The next question, therefore, is as to the sufficiency of the plea in this regard.

The position of the defendants is that the sale of the tickets gave rise only to a personal license, revocable at any time, and whose revocation would confer no right of action, except for the money paid, with such incidental damages as would arise from the expense and inconvenience of going to the theatre to no purpose. Plaintiff, on the contrary, contends that the sale of the tickets conferred a right to the seats for the performance in question, or at least an irrevocable license, and that an actionable wrong was committed in refusing to permit plaintiff and his party to occupy them; and if this position be untenable, and if it be held that defendants could revoke the license and cancel the tickets before the holders had taken their seats, the license had become an executed one after they were seated and was then irrevocable.

The leading case on this subject is *Wood* v. *Leadbitter*, 13 *M. & W.* 838; 14 *L. J. Exch.* 161; 16 *E. R. C.* 49, decided in 1845. In that case plaintiff had paid a guinea for admission to the grandstand at the Doncaster races. He was either in the grandstand enclosure or on the stand itself (at *p.* 841) when ordered to leave, and, on refusing, was put out without unnecessary violence. His guinea was not returned or tendered. The question whether the license, which the replication set up, was revocable or irrevocable, was fully considered by the court, which sustained a charge that it was lawful for the owner of the premises, under whom defendant justified, to order plaintiff out, without returning the guinea or assigning any reason. The opinion of the court, delivered by Baron Alderson, contains an elaborate review of earlier authorities and overruling the case of *Taylor* v. *Waters*, 7 *Taunt.* 374, which held that a ticket to the opera house was an irrevocable license, lays down the rule that such a ticket

confers a license essentially revocable; that the fact that a valuable consideration was paid makes no difference, for if any action would lie, it would have to be founded on a breach of contract and would not be the result of having acquired by the ticket a right of going upon the stand in spite of the owner of the soil.

In this country the decisions are not entirely in accord, but the majority of them appear to follow *Wood v. Leadbitter.*

In *McCrea v. Marsh,* 12 *Gray* 211, plaintiff had a theatre ticket to the family circle and was stopped at the head of the stairs. But the court said (at *p.* 213), "according to the decision in *Wood v. Leadbitter,* even if the plaintiff had been permitted to enter the family circle, the defendant might have ordered him to leave it at any time during the exhibition, and upon his refusal might have removed him, using no unnecessary force." It was held that plaintiff might recover in contract the price of his ticket and all legal damages sustained by the breach of the contract implied by the sale and delivery of the ticket, but that an action of tort would not lie. Other decisions to the same effect are *Burton v. Scherpf,* 1 *Allen* 133; *Horney v. Nixon,* 213 *Pa.* 20; *Taylor v. Cohn,* 47 *Oreg.* 538. In *Buenzle v. Amusement Assn.,* 29 *R. I.* 23, the suit was in *assumpsit,* and the damages were confined to pecuniary loss. A similar case is *Luxenberg v. Keith Amusement Co.,* 117 *N. Y. Supp.* 979.

In *People v. Flynn,* 189 *N. Y.* 180, involving a complaint of criminal conspiracy between several managers to prevent a professional critic from obtaining access to their theatres, it was ruled that such exclusion was lawful.

Cases looking the other way are *Cremore v. Huber,* 45 *N. Y. Supp* 947, in which it was held that the trial court properly refused to charge that plaintiff was bound to leave on request; *Smith v. Leo,* 36 *Id.* 949, an ejection from a dancing class after plaintiff had been enjoying its privileges for some time; and *Drew v. Peer,* 93 *Pa. St.* 234, principally relied upon by plaintiff. Of *Cremore v. Huber* it may be said that the element of assault was in the case.

Drew v. Peer was a suit by a husband for ejection of and assault on the wife, per quod. The action was held to be properly in case, and the question whether there was a license or right was held immaterial. The court thought obiter, that there was more than a license. This case is distinguished if not overruled, in the later case of Horney v. Nixon, 213 Id. 20, already cited, where it is said that "a theatre ticket is to be regarded as a mere license, for the revocation of which before the holder has actually been given his seat, and has taken it, the only remedy is in assumpsit for a breach of the contract." Smith v. Leo, 36 N. Y. Supp. 949, is apparently in point, and if now followed would lead to overruling this demurrer.

In Weber-Stair Co. v. Fisher, a Kentucky case, unofficially reported in 119 S. W. Rep. 195, exemplary damages were allowed for what was evidently a wanton and unprovoked assault, the court intimating that if plaintiffs had been treated politely they could not have recovered. A circumstance in the case was that their tickets read for another performance through an error of the box office, and by a second error of the ticket-taker and usher, plaintiffs had been actually seated.

Collister v. Hayman, 183 N. Y. 250, is the celebrated ticket speculator case, and turned on a clause in the ticket that it would be void if sold on the sidewalk. The court calls the ticket itself a license, issued pursuant to a contract, but this language was in no way essential to the ruling on which the case turned, which was that the ticket was forfeited by breach of the condition as to selling it on the sidewalk.

The case of Wood v. Leadbitter has been relied on a number of times as authority in our reported cases. In Den, ex dem. Richman, v. Baldwin (1848), 1 Zab. 395, 404, it is cited twice, first in connection with the definition of a license, and again as authority for the proposition that a parol license (i. e., one not under seal) to go and remain for a certain time on another's land, though for a valuable consideration, unless coupled with an interest, is revocable at the will of the licensor. In Central Railroad v. Hetfield (1861), 5

*Dutcher* 206, 221, Chief Justice Whelpley in his dissenting opinion in this court cited it as authority for the same rule in a case where the question was whether the railroad could justify under a parol consent as irrevocable, the charter giving it the right to occupy lands "with the consent of the owner." It was held in this court that a parol consent was sufficient and irrevocable if given pursuant to the charter, but in the Court of Errors and Appeals the judgment was reversed and the Chief Justice's view upheld. 5 *Dutcher* 571.

· In *New Jersey Midland Railway* v. *Van Syckle* (1874), 8 *Vroom* 496, the consent was by deed, and on *p.* 501, Wood *v.* Leadbitter is again cited on the question of license. In the equity reports it is cited to the same point in *Veghte v. Raritan Water Power Co.*, 4 *C. E. Gr.* 142, 153; *East Jersey Iron Co.* v. *Wright*, 5 *Stew. Eq.* 248, 253; *Morton* v. *Morton*, 2 *Dick. Ch. Rep.* 158, 165, and in *Standard Oil Co.* v. *Buchi*, 2 *Buch.* 492, 502, where the late Vice Chancellor Pitney, sitting as advisory master, fully recognizes its authority though distinguishing the case then under consideration. The decision in Veghte *v.* Raritan Water Power Co. was reversed in 6 *C. E. Gr.* 463, on principles of equity and construction of the clause "written consent or permission" in the defendant's charter and without impairing the force of the rule as established at common law.

The revocability of a license, even when valuable consideration has been paid, is asserted by the Court of Errors and Appeals in *Lawernce* v. *Springer*, 4 *Dick. Ch. Rep.* 289, and by the Court of Chancery in *Eckert* v. *Peters*, 10 *Id.* 379.

In view of the substantially uniform approval of, and reliance on, the decision in Wood *v.* Leadbitter in our state adjudications, it must fairly be considered to be adopted as part of our jurisprudence, and whatever views may be entertained as to the natural justice or injustice of ejecting a theatre patron without reason after he has paid for his ticket and taken his seat, we feel constrained to follow that decision as the settled law, and leave the question of changing it to the legislature, to whom the decision of such questions belongs.

It is argued that the fact 'that plaintiff and his party had passed into the theatre and taken their seats should differentiate this case from Wood v. Leadbitter and other decisions to the same effect. Assuming that the point is adequately raised by the demurrer, it cannot avail the plaintiff, for in Wood v. Leadbitter plaintiff may have been actually in the grandstand, as already noted, and as commented on in *McCrea v. Marsh, supra.* It would be difficult, if not impracticable, to draw a line somewhere between the gate of the ticket-taker and the end of the performance, on one side of which the proprietor could revoke his license, and on the other he could not; or to hold that the license was executed any more effectually after the licensee had taken his seat than when he passed into the theatre.

The demurrer to the plea will therefore be overruled.