## Commonwealth *v.* George, Appellant.

*Constitutional law—Civil rights—Theatre—Discrimination on account of color—Equality of accommodations—Act of May 19, 1887, P. L. 130—Police power.*

The Act of May 19, 1887, P. L. 130, which provides "That any person......being the owner, lessee, or manager of any...... theatre, concert hall, or place of entertainment, or amusement, who shall refuse to accommodate, convey, or admit any person or persons on account of race or color......into their theatre, concert hall or place of amusement, shall, upon conviction thereof, be guilty of a misdemeanor," is a proper exercise of the police power, and is constitutional.

A theatre proprietor who sets aside a portion of his theatre for the accommodation of colored patrons exclusively, cannot be convicted of violating the Act of May 19, 1887, P. L. 130, unless it be shown to the satisfaction of a jury that the accommodation afforded by the portion set aside is not equal to that afforded by other parts of the theatre.

Argued March 10, 1915. Appeal, No. 17, March T., 1915, by defendant, from judgment of Q. S. Dauphin Co., March T., 1913, No. 80, on verdict of guilty in case of Commonwealth v. Athens George. Before RICE, P. J., ORLADY, HEAD, HENDERSON, KEPHART and TREXLER, JJ. Reversed.

Indictment for violating the Act of May 19, 1887, P. L. 130. Before MCCARRELL, J.

At the trial it appeared that the prosecutors, after having bought tickets for entrance to the defendant's theatre, were refused admission to the ground floor and were directed to sit in the balcony. Defendant made the following offers:

We propose to show that the seats in the balcony are the same style as the seats below; the seats are practically the same style and quite as comfortable as the seats below. We also propose to show that the balcony was carpeted, that it is fitted up with electric fans for

the accommodation of patrons. We propose to show further that the view from the balcony, if anything, is better than the view from below, and that white people as well as colored people choose at times to sit in the balcony rather than down stairs, and that the seat to which the prosecutor was directed was in all respect a comfortable, safe and convenient seat, not inferior in any of these respects to the seats in the lower portions of the house.

Mr. Funk. This testimony is objected to for the reasons stated, that the type of accommodations is not in the case, the question being whether or not a person entitled to a seat can sit where he or she has the right to sit, irrespective of race or color. Offer excluded. Exception. (10)

"We propose to prove by the witness on the stand, by Charles B. Van Arsdellan, by R. J. Andrews, a representative of the Harrisburg Light, Heat and Power Company, by Mrs. Pauline Sanders, By Miss Carrie Yingst, by Mrs. John Sheridan, M. E. Windfield, by E. P. Handshaw, by E. G. Blosser, by H. W. Smith, by C. Schaffner, all residents of the City of Harrisburg, that they have been from time to time patrons of the Victoria Theatre, that they are all white people, they have chosen the balcony of that theatre by preference, that the accommodations there are as good as the accommodations in any other part of the house, and that the view of the pictures, this being a moving picture show, is better; that for the purpose of showing that the seat that the prosecutor was invited to take, was in all respects a comfortable safe and convenient seat and not inferior in any respect to those in other parts of the house.

"Mr. Wickersham. The same objection is made as to the other offer.

"The Court. The objection is sustained and the evidence excluded and a bill sealed for the defendant." (11)

Defendant presented this point:

11. If the jury believe that the defendant honestly as-

signed the prosecutor to a reasonably comfortable and convenient seat in the house equal in every respect to the average accommodation of its patrons and the defendant objected and refused to occupy this seat for no special objection and for no reason other than because of a claim of right to occupy any seat in the house he saw fit, then the verdict must be for the defendant.

Answer. This point is refused. (12)

The court charged as follows:

You must be satisfied from the evidence beyond any reasonable doubt that this defendant did do the prohibited thing, that he did refuse to admit or refuse to give the accommodations of the theatre or place of amusement to those persons because of their race or color. If there was a refusal of admission to the place, and it was for any other reason, it is matter of no importance here. If there was a refusal to admit or refusal to give accommodations because of that fact beyond any reasonable doubt, it is your duty to convict. (15)

These persons according to the testimony were refused admission to the first floor of that theatre. Was that refusal because of their race or color? Are you satisfied beyond a reasonable doubt that admission to that floor was refused, that the accommodation of that floor was refused because of their race or color? Are you satisfied of that beyond a reasonable doubt? You must be satisfied of that beyond a reasonable doubt. You consider the testimony of Mr. Robinson and Dr. Crampton and the other witnesses in connection with this notice which was posted there publicly. Was that the reason they were excluded? If you are satisfied beyond any reasonable doubt that was the reason they were excluded from that floor, then it is your duty to convict. It does not do for the proprietor of a place of that kind to say: You can just come in and sit on the balcony, you can see better on the balcony. He has no right to compel you to climb the stairway on to the balcony when there are unoccupied seats on the first floor. You have the right to

select your own seat if it has not been reserved and not occupied by anybody else, as long as you behave yourself in a quiet and orderly way.   (16)

Verdict of guilty upon which judgment of sentence was passed.

*Errors assigned,* among others, were (8, 12, 15, 16) instructions quoting them (10, 11), rulings on evidence quoting the bill of exceptions.

*Wm. M. Hargest,* of *Hargest & Hargest,* with him *Fox & Geyer,* for appellant.—A colored person has no greater rights than a white person and the purchase of a theatre ticket cannot invest him with more: Horney v. Nixon, 213 Pa. 20.

The Act of 1887 relates only to admission and not to accommodations to a theatre: Russ's Application, 20 Pa. C. C. R. 510.

The Act of 1887 provides for civil rights, but does not provide for either the same or greater rights to colored persons: Horney v. Nixon, 213 Pa. 20; Choctaw O. & G. Co. v. State, 75 Ark. 279; Younger v. Judah, 16 L. R. A. 558 (Mo.); Anderson v. Louisville, Etc., R. R. Co., 62 Fed. Rep. 46; Plessy v. Ferguson, 63 U. S. 537; Morrison v. State, 116 Tenn. 534; State v. Hicks, 44 La. Ann. 770; 11 So. Rep. 74; Louisville, Etc., Railroad Company v. Mississippi, 133 U. S. 587; Joyner v. Moore-Wiggins Co., 152 App. Div. (N. Y.) 266; Ferguson v. Gies, 82 Mich. 358; Baylies v. Curry, 128 Ill. 287; Munn v. State of Illinois, 94 U. S. 113; West Chester & Philadelphia R. R. Co. v. Miles, 55 Pa. 209.

The manager of a place of amusement may make reasonable regulations for the separation of the races whom he is required to admit.

*J. Clarence Funk,* with him *Michael E. Stroup,* District Attorney, and *Edward F. Doehne,* for appellee.—

The defendant was guilty of a violation of the statute: Russ's Application, 20 Pa. C. C. R. 510.

The offer of the defendant to give him a seat in the balcony forms no excuse, and did not render his action any less a discrimination against the complainant, or any less a violation of the statute: Joyner v. Moore-Wiggins Co., 152 App. Div. N. Y. 266; Central R. R. of N. J. v. Green, 86 Pa. 421; Ferguson v. Gies, 82 Mich. 358.

Though a penal statute making a strict interpretation necessary, the interpretation must be reasonable as well: Com. v. Grant, 2 Woodward 378; Eshleman's App., 1 Leg. Chron. (Pa.) 245.

Especially is this true where the literal meaning would be absurd: Bartollet v. Achey, 38 Pa. 273; Hazel Township, 1 D. R. 813.

Civil rights as used in the Act of May 19, 1887, mean equal or same, but not greater rights: R. R. Co. v. Brown, 17 Wall. 445.

The court was compelled, on the trial of this indictment to exclude any and all evidence tending to show that the seat to which the prosecutor was invited was in all respects equal to other seats in the theatre: Railroad Co. v. Brown, 17 Wall. 445; Joyner v. Moore-Wiggins Co., 152 N. Y. App. Div. 266; Ferguson v. Gies, 82 Mich 358; Donnell v. State, 48 Miss. 661; N. Y. v. King, 1 L. R. A. 293.

The manager of a place of amusement may make reasonable regulations for the comfort, convenience and control of his theatre, but any regulations based upon race or color alone are not reasonable and are expressly prohibited by the Act of May 19, 1887.

OPINION BY KEPHART, J., October 11, 1915:

This is an appeal from a conviction under the Act of May 19, 1887, P. L. 130, which, in substance, is as follows: "That any person......being the owner, lessee, or manager of any......theatre, concert hall, or place of entertainment, or amusement, who shall refuse to ac-

commodate, convey, or admit any person or persons on account of race or color......into their theatre, concert hall, or place of amusement, shall, upon conviction thereof, be guilty of a misdemeanor......" The defendant was the owner of a theatre in the City of Harrisburg, consisting of a main floor and balcony. On the ticket booth there was posted the following notice: "The balcony of this theatre is provided for our colored patrons. If you do not desire to sit in the balcony do not purchase tickets as they will not be honored in any other section of the house." The prosecutor, with another colored person, purchased tickets, was admitted to the lobby, and requested to take seats in the balcony. No seats were reserved for any particular persons, either on the first floor or in the balcony, and anyone buying a ticket of admission had permission to occupy any seat he might choose, if he was behaving himself and conducting himself in an orderly way, with the exception of the regulation above mentioned. The prosecutor was denied admission to the first floor, and upon being refused, he, with his companion, withdrew from the theatre. Did these acts of the owner of the theatre constitute a violation of this act of assembly?

The statute before us is a proper exercise of police power; it is not an arbitrary deprivation of property without due process of law. In the enactment of laws under the police power, there is always a certain amount of interference with property rights, but laws are not condemned on that account, unless this interference amounts to a practical confiscation. That its constitutionality is sustained may be found in the cases of Com. v. Ayers, 17 Pa. Superior Ct. 352; Com. v. Mintz, 19 Pa. Superior Ct. 283; Com. v. Rothermel, 27 Pa. Superior Ct. 648.

As we discuss the validity of this act, we do not place much stress on the distinction, urged by counsel, between the words "admit" and "accommodate." Either would be sufficient if the act were intended to cover the facts

properly before the court.   The crux of this case is in the proper construction of the statute as a whole, applying to it the results sought to be obtained, and under the well-settled principles of law governing the construction of penal statutes.   It was held in Horney v. Nixon, 213 Pa. 20, that "the proprietor of a theatre is a private individual, engaged in a strictly private business, which, though for the entertainment of the public, is always limited to those who he may agree to admit to it......A theatre ticket being a mere license to the purchaser, which may be revoked at the pleasure of the theatrical manager."   But to this must be added, if we apply the Act of 1887, except that he may not refuse to admit persons to the theatre on account of race and color.   It is not a discrimination in favor of colored persons, as it applies to all races and all colors.   The title to the act reads: "To provide civil rights for all people regardless of race and color."   As decided in Horney v. Nixon, supra, there is no vested civil right in a person intending to visit a theatre to have admission given him, and no tort is committed at common law by refusing or canceling such admission.   Civil rights, as they have been most generally defined, are those which have no relation to the establishment or management of government. They consist in the power to acquire and enjoy property and in exercising the paternal and marital powers and the like, the right due from one citizen to another: Anderson's Law Dictionary; Bouvier's Law Dictionary. They are the absolute rights, the right of personal security, the right of personal liberty, the right to acquire and enjoy property as regulated and protected by law, and are distinct from political rights and exist without them.   The title of the act evidently intended to create a "civil right" in the persons to be benefited, but the body of the act nowhere speaks of the right to enter a theatre as being a civil right.   It was not at common law; but whether the legislature succeeded in creating a civil right, the deprivation of which could be redressed in

damages for its violation, we need not here decide. As-
suming, for the purpose of this case, that a civil right ex-
ists, what are we to understand by "civil right" as ap-
plied to this act of assembly? It was the intention of the
13th, 14th and 15th amendments to the Federal Constitu-
tion to create, and protect from discrimination, the privi-
leges and immunities (civil rights) of citizens of the
United States, regardless of race and color. The underly-
ing motive, existing at the time of their enactment, was
the protection of the colored race. It was thought that the
intention of these amendments was to preserve the same
rights to all races and colors; yet the Supreme Court
of the United States has sustained the laws and regula-
tions making a distinction between the races in matters
concerning their social relations, and in so doing em-
phasized the fact that civil or equal rights did not mean
the same or identical rights. In Plessey v. Ferguson,
163 U. S. 537, they held that the laws of Louisiana,
which required railroad companies to provide separate
accommodations for the different colors and races, were
not a violation of the 13th and 14th amendments, which
guaranteed civil rights, freedom from discriminations
by state laws on account of race and color. It was
held that this law was a valid exercise of the legislative
power, evidencing that equal rights were not the same
and identical. In Roberts v. City of Boston, 5 Cushing
198, the Supreme Court of Massachusetts held that the
general school committee of Boston had power to make
provision for the instruction of colored children in sepa-
rate schools established exclusively for them, and to
prohibit their attendance upon the other schools. And
similar legislation has been enacted by Congress for the
District of Columbia and in various states. Laws for-
bidding intermarriage of two races have been held valid:
State v. Gibson, 36 Ind. 389. In the most recent opinion
on the subject, Chiles v. Chesapeake & Ohio Ry. Co., 218
U. S. 71, it was held that the regulation of a railroad
company requiring colored passengers and white passen-

gers to be separate while traveling between states, was a reasonable regulation and did not offend against the constitutional amendments. Under a statute, "requiring railways to provide separate waiting rooms of equal and sufficient accommodations, for the two races, at all passenger depots, it is not necessary for a railroad to furnish the same accommodations for each race...... the object of the statute is merely to prevent discrimination": Choctaw, O. & G. R. Co. v. State, 75 Ark. 279; 87 S. W. Repr. 426. It was held by the Circuit Court of Appeals, in McCabe v. Atchison, Topeka & Santa Fe Railroad Co., 186 Fed. Repr. 966, that where a statute provided that sleeping cars, dining or chair cars, attached to their trains, should be used for either white or negro passengers separately, imposed no obligation on the carriers to haul dining or parlor cars for both races but permits them to haul cars for the separate use of either race, and when cars are hauled for the one race it was not a discrimination against the other race, and did not deprive any race of the equal protection of the law. The dissenting opinion of Mr. Justice HARLAN, in Plessey v. Ferguson, supra, emphasizes the distinction made by the majority opinion in the term "civil right," but the law seems to be now well settled that "civil rights" do not mean the same or identical rights. The civil right here protected would indicate an equal, as good as, and a sufficient right. The defendant having admitted the persons to the theatre, did he comply with the Act of 1887 by refusing them admission to any part of the house, or refusing to furnish them the same accommodations as that accorded to others patronizing the theatre, or was there a compliance with the act if equal and sufficient accommodations were offered?

It is evident, under the authority of Chiles v. Chesapeake & Ohio Ry. Co., supra, that the regulation of the proprietor of the theatre would not have been any violation of the law unless the Act of 1887 makes it so. These regulations are not an invasion of any common

law right. As stated in Younger v. Judah, 16 L. R. A.
558, "a discrimination against colored persons by per-
mitting them to sit only in the balcony of a theatre is
not unlawful, in the absence of any statute to the con-
trary." The decisions of other states, predicated on
acts, the language of which is clear and explicit, do
not aid in the interpretation of the statute before us.
Remembering that the Supreme Court of the United
States has held that civil rights do not mean the same
or identical rights, and that our own Supreme Court has
held that the owner of a theatre is a private citizen en-
gaged in a strictly private business, which, though for
the entertainment of the public, is always limited to
those whom he may agree to admit to it (provided he can-
not refuse admission on account of race and color);
that penal statutes must be strictly construed; that the
art of subtle reasoning should not be employed to
bring within the folds of the statute acts which would
not otherwise be an offense, should the defendant have
been permitted to show that the accommodations offered
were equal and sufficient to those accorded others in the
theatre? Accepting appellee's contention that this
"right" was "to admit and accommodate," the title to the
act might well have read "equal and sufficient right."
And so the right to be admitted and accommodated, in
so far as its legal interpretation bears us out, might well
have been read in like manner. Being bound by the sub-
ject-matter of the act, expressed in the title, it could not
have a meaning in excess of that there provided. Had
the legislature, in view of the law as it existed, wished
this "right" to be the same right, they should have said
so in plain language. When an act of assembly seeks to
wipe out an existing common law right, it must do so
in language such as to leave no doubt as to the intention.
The common law recognized the right to make different
classes of accommodation and one was accommodated
when enjoying any one of those classes; and under the
Act of 1887 he is still accommodated when enjoying any

one of those classes.  With this in addition, such accommodation must be equal and sufficient to other accommodations and no discrimination on account of race or color is permitted.  It would be a question for the jury to say whether seats in the balcony are equal to seats in the orchestra circle, and if they were not, the defendant clearly violated this act of assembly.  The defendant was permitted to make reasonable regulations for the comfort and convenience of his patrons, such regulations as the established usages, customs and traditions of the people, and the preservation of the public peace and good order demand.  These common law rights, in view of the authorities we have just mentioned, are not taken away by this act of assembly upon any reasonably fair interpretation of it.  To trace the act to the conclusion deemed logical by the appellee in this case, it would be necessary for the interpolation of sufficient language by this court to make the offense a crime, and by inference to wipe out existing rights and declare, by inference, to be crimes, acts which before had the sanction of the law.  Penal statutes are to be strictly construed.

The case of Railroad Co. v. Brown, 17 Wallace 445, relied on by counsel for the appellee, does not control the question before us.  The principal reason urged for the conclusion reached was the fact that there "was no occasion in legislating for a railroad corporation to annex a condition to a grant of power, that the company should allow colored persons to ride in its cars.  This right had never been refused, nor could there have been in the minds of any one an apprehension that such a state of things would ever occur," and as stated by Mr. Justice Brown, in Horney v. Nixon, supra, there was a duty "in the case of a common carrier, to admit everyone who may apply and be willing to pay for a ticket......(as a common carrier) has acquired......peculiar rights and privileges from the state, and is, therefore, under...... implied obligations to serve the public."  As stated in Railroad Company v. Brown, supra, the condition im-

posed by Congress meant something beyond mere admission to cars, and "this condition it had a right to impose." We entirely agree with the sentiment expressed in New York v. King, 1 L. R. A. 293: "The race prejudice against persons of color, which had its root in part at least in the system of slavery, was by no means extinguished when the slaves became freemen and citizens. But this great act of justice towards an oppressed and enslaved people imposed upon the nation great responsibilities......Both justice and the public interest concur in a policy which shall elevate them as individuals, and relieve them from oppression or degrading discrimination, and which shall encourage and cultivate a spirit which will make them self-respecting, contented, and loyal citizens and give them a fair chance in the struggle of life, weighted, as they are at best, with so many disadvantages. It is evident that to exclude colored people from places of public resort on account of their race is to fix upon them a brand of inferiority, and tends to fix their position as a servile and dependent people......But the law in question simply insures to colored citizens the right to admission, on equal terms with others, to public resorts, and to equal enjoyment of privileges of a quasi-public character."

The tenth, eleventh, twelfth, fifteenth and sixteenth assignments of error, as controlled by this opinion, are sustained. The eighth assignment is denied as not being broad enough. The remaining assignments are overruled. The judgment is reversed and a venire facias de novo awarded.