# Krum & Peters *versus* Anthony.

In an action on the case to recover damages for the loss of a horse which had strayed from the pasture through a decayed and broken down fence, and fallen into a stone quarry, the court refused to charge the jury, as requested, that if the plaintiff knew that the quarry of the defendants was open and exposed on the side adjoining the property occupied by him, and with such knowledge he put or permitted his horse to pasture in the adjoining field, and while so pasturing the horse strayed on the property of the defendants and was killed by accidentally falling into a stone quarry, the plaintiff was guilty of contributory negligence, and could not recover. *Held* to be error, for the gist of the action was the negligence, and not the breach of the contract to keep the fence in repair, and therefore any contributory negligence on part of the plaintiff would defeat his recovery.

February 16th, 1887. Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.

[Krum & Peters *v.* Anthony.]

ERROR to the Court of Common Pleas of *Lehigh county:* Of July Term, 1886, No. 92.

Case by Thomas Anthony against Nelson Krum and Franklin Peters to recover damages for the loss of a horse, occasioned by the alleged negligence of the defendants in not making and keeping in repair a fence between the lands of the plaintiff and the defendants, through which neglect the plaintiff's horse had strayed into the defendants' field and fallen into a stone quarry and was killed.   Plea, not guilty.

The following are the facts of the case as they appeared on the trial:

About twenty years before the accident, Nathan Kern and Harry Williams were the owners of two adjoining farms in Lehigh county.  They agreed in parol that a certain fence then existing between parts of the two tracts should be kept up by Williams at the lower end, and by Kern at the upper end.  The fence was made by Nathan Kern forty years before, when his father was the owner of the Williams tract.  Shortly after the agreement between Kern and Williams the former sold his tract, and at the time of the injury complained of it was in the possession of Anthony, the plaintiff.  Williams died several years before the accident and a part of his tract was leased by his heirs to the defendants for the purpose of working a slate quarry on the property.  As this quarry was worked it extended farther and farther towards the plaintiff's line until it reached within six or eight feet of it.  The fence between the two tracts was a worm fence, and gradually became worn out—part of it was removed, but not by the defendants—and part of it, extending along the edge of the quarry was down and had been for a long time previous to the accident.  The plaintiff admitted at the trial that he knew the fence was down and had been for a long time—that he saw it every day—that it was down the whole length of the quarry —and that he was fully acquainted with its condition.  He put a horse to pasture at night-time in the field adjoining the quarry.  There were two open quarries in this field on the plaintiff's tract that were unfenced and no fence between that held and the defendant's quarry.  During the night this horse, while pasturing in this unfenced field, strayed on the premises of the defendants and fell into the quarry and was killed. It was contended by the defendants that they were not obliged to fence in their quarry or to keep up the fence already there, and that they were not bound by the parol personal contract between Kern and Williams; and that if they were bound by this understanding they were not liable in this action, because the plaintiff was guilty of contributory negligence.

The defendant presented, *inter alia*, the following points for charge:

If the jury believe that the plaintiff knew that the quarry of the defendants was open and exposed on the side adjoining the property occupied by him, that there was no guard or fence between the said properties, that the quarry was a deep one, and with such knowledge he put or permitted his horse to pasture in the adjoining field, and while so pasturing he strayed on the property of the defendants, and was killed by accidentally falling into said quarry, then the plaintiff was guilty of contributory negligence and he cannot recover in this case.

Answer. "Negatived." (Third assignment of error.)

If the plaintiff knew that the fence was no longer there, or was bad, and he put his horse in the field, and the horse strayed over and fell into the pit, he would be guilty of contributory negligence and could not recover. Answer. I cannot so instruct you. According to my view of the law, if the defendants were bound to keep up the fence and did not keep it up, I say to you if the defendants are found by you to have been liable to make that fence, and they failed to make it, and the plaintiff put his horse into the field, and the horse came over through that fence or where it should have been, the defendants may be held liable. (Fourth assignment of error.)

In the general charge the court instructed the jury, *inter alia*, as follows:

If it is found that it was the duty of Krum & Peters to make the fence, and that they neglected and refused to make it, and that owing to that neglect the horse was lost, then the defendants are liable.

If the plaintiff has convinced you that such was the understanding and contract between the owners of the land at one time, and that that was never changed, then the duty fell upon the owners of the Harry Williams tract to maintain the fence at the northern end.

If the owners of the Harry Williams tract were bound to make the northern half of the fence, then Krum & Peters, who were the lessees of the Harry Williams heirs, were bound to maintain that part of the fence adjoining the quarry, separating it from the field of Mr. Anthony on the east. (Fifth assignment of error.)

Verdict for the plaintiff in the sum of $114.09 and judgment thereon, whereupon the defendants took this writ and filed the above assignments of error.

*Edward Harvey* and *John D. Stiles* (*Levi Smoyer* and *H. G.*
5 AMERMAN—28

*Stiles* with them), for plaintiffs in error.—Contributory negligence in any degree on part of the plaintiff will prevent recovering in an action for damages: Monongahela City *v.* Fischer, 1 Amerman, 9; R. R. Co. *v.* Taylor, 104 Pa. St., 306; Butterfield *v.* Forrester, 11 East, 60; Wilson *v.* Charleston, 8 Allen, 137; Horton *v.* Ipswich, 12 Cush., 488; Holman *v.* Townsend, 13 Met., 297; Port *v.* R. R. Co., 108 Pa. St., 585; Scranton *v.* Hill, 102 Id., 378; Erie *v.* Magill, 101 Id., 616; Centralia *v.* Krouse, 64 Id., 19; R. R. Co. *v.* Collins, 87 Id., 405; Fleming *v.* Lock Haven, 15 W. N. C., 216; Altoona *v.* Lotz, 18 Id., 524.

As there was no legal duty devolving upon the defendants to fence their quarry there can be no legal liability arising from a right to fence it. At common law the owner of land was not bound to fence out cattle, and if they strayed upon unenclosed land it was at their risk: Wharton on Negligence, p. 883. The same view is taken in Railroad Co. *v.* Rushman, 49 Pa. St., 101, and Railroad Co. *v.* Skinner, 19 Id., 298. Every man is bound to keep his cattle on his own land at his peril: Aury *v.* Maxwell, 4 N. H., 36; Mills *v.* Stark, 4 Id., 514; Towns *v.* Railroad Co., 1 Foster, 363.

For years this fence was down. No one repaired it. Upon the two tracts there were opened quarries, and the land was hilly, and whatever duty was assumed by Williams and Kern was waived long ago. Surely the parties might waive a common duty: Milligan *v.* Wehinger, 68 Pa. St., 235.

*James S. Biery*, for defendant in error.—Where there is in fact a partition fence, the duty of contribution to maintain it exists—and either party can excuse himself from this duty by alleging that the line is in dispute: Stephens *v.* Shriver, 1 Casey, 78.

The proportion in which partition fences are to be kept up is clearly defined by the third section of the Act of 11th March 1842, (P. L., 62).

The occupier of the dominant tenement is entitled to the benefit of his field for turning in other people's cattle as well as his own stock; and if he takes in another man's horse, and the horse gets through a ruinous fence, which the adjoining occupier ought to have repaired, and falls into a pit on the adjoining land and is killed, the occupier who ought to have repaired the fence is, as we have seen, responsible for the full value of the horse to the occupier of the field from which the horse strayed: 1 Add. on Torts, Wood's Ed., p. 268, pl. 243; Rooth *v.* Wilson, 1 B. & Ald., 59.

Where A.'s sheep escaped from his land into B.'s land through the insufficiency of a fence which B. was bound to

repair, and thence passed into another adjoining lot of B., which was surrounded by a sufficient fence, and committed damage, it was held that B. could not maintain trespass therefor against A.: Page v. Olcott, 13 N. H., 399.

Where there is only a line between the lands of the parties, each has a right to insist upon a common partition fence along it: Rangler v. McCreight, 3 Casey, 97.

Under the Act of 11th March, 1842, relative to fences, the expense of a partition fence on adjoining improved lands belonging to two persons is to be borne by them equally: Rohrer v. Rohrer, 6 Harris, 367.

Keeping up the partition fence between adjoining landowners is a common duty: Milligan v. Wehinger, 18 P. F. S., 235.

Owners of adjoining lands with a division fence between them, built one half by each, and established for more than twenty-one years, have not such an ownership in the materials of which it is made as will justify a removal by either of the portion built by him, against the consent of the other; and for such removal an action of trespass will lie: Stoner v. Hunsicker, 11 Wright, 514.

Mr. Justice GREEN delivered the opinion of the court, March 7th, 1887.

We think the learned judge of the court below was in error in his treatment of the subject of contributory negligence. His view seems to have been that if the defendants were subject to a contract duty to maintain the division fence between them and the plaintiff, at the place of the accident, had neglected to perform that duty, in consequence of which the plaintiff's horse was lost, the liability of the defendants was fixed whether the plaintiff's negligence contributed to the injury or not. We so understand the part of the charge covered by the fourth assignment and the answer to the defendants' third point. We are unable to agree with that view of the subject. It ignores entirely the consequences of the plaintiff's negligence contributing to the injury *for which the suit is brought.* Just here we think is the point in respect of which the learned judge was mistaken.

The action was not brought to recover damages for the breach of a contract to maintain a fence. On the contrary it was an action of case sounding in tort to recover damages for the loss of a horse, resulting from the *negligence* of the defendants. This negligence is the very *gist* of the action. So far as the subject of contributory negligence is concerned it is precisely the same as if the action had been brought to recover damages for a personal injury. As we understand the law in

[In re Public Road in Benzinger Township.]

any case where an injury by the negligence of the defendant is the basis of the action, the right to recover may be resisted by proof that the plaintiff's own negligence contributed to the injury. If such negligence was in part the occasion of the injury, which the plaintiff alleges he has sustained, the law will not discriminate between the negligence of the plaintiff which contributed to the injury and the negligence of the defendant which also contributed to it. It simply will not allow a recovery in such a case. The facts presented by way of hypothesis in the defendants' third point were such as, if found by the jury, undoubtedly constituted contributory negligence on the part of the plaintiff, and as there was evidence in support of them, the point should have been affirmed.

The language covered by the fourth assignment is obnoxious to the same objection, as it overlooks entirely the effect of the plaintiff's contributory negligence. The third and fourth assignments of error are sustained and upon them the judgment is reversed.

Judgment reversed and *venire de novo* awarded