J-E04001-24

2025 PA Super 277

| | | |
|---|---|---|
| ANTOINE POTEAT | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| GARY ASTEAK AND NINO V. TINARI | : | No. 729 EDA 2023 |

Appeal from the Order Entered February 7, 2023
In the Court of Common Pleas of Lehigh County
Civil Division at No:  2022-C-02045

BEFORE:  LAZARUS,  P.J.,  PANELLA,  P.J.E.,  STABILE,  J.,  DUBOW,  J.,
KUNSELMAN, J., MURRAY, J., KING, J., SULLIVAN, J., and BECK, J.

DISSENTING OPINION BY STABILE, J.:          **FILED DECEMBER 11, 2025**

I  respectfully  dissent.  The  Appellant,  Antoine  Poteat,  has  asserted

actions for breach of contract against his attorneys, Appellees, Gary Asteak

and Nino V. Tinari, based solely upon their implied obligation to provide legal

services in a manner consistent with the profession at large.  I conclude, like

the  trial  court,  that  Appellant's  breach  of  contract  claims  were  properly

dismissed  upon  preliminary  objections  for  legal  insufficiency,  as  the  claims

sound only in tort and not in contract.[1]

The  Majority  holds  the  trial  court  committed  error  on  two  grounds  in

dismissing with prejudice Appellant's complaint for breach of contract.  First,

deferring, as it must, to our recent decision in **Swatt v. Nottingham**, -- A.3d.

---

[1] The grounds for my dissent here are similar to those given in my dissent in
the related case of **Swatt v. Nottingham**, -- A.3d. --, 2025 WL 1821998 (Pa.
Super. filed July 2, 2025) (*en banc*).

--, 2025 WL 1821998 (Pa. Super. filed July 2, 2025) (*en banc*), the Majority finds it was error to apply the gist of the action doctrine to dismiss Appellant's claims. In doing so, the Majority, like the *en banc* panel in **Swatt**, again departs from almost 200 years of controlling precedent that distinguishes between causes of action in contract and tort based upon the breach of duty alleged.

Second and relatedly, the Majority holds that an implied duty *alone* may sustain both an action for breach of contract and one sounding in tort. In my view, this too is in error because it ignores our Supreme Court's holding in **Bruno v. Erie Ins. Co.**, 106 A.3d 48 (Pa. 2014), which reaffirmed and explained the difference between the respective duties that will support breach of contract and tort actions, making clear that an action in contract will only lie for the breach of an express contractual obligation.

### A. The Facts of the Present Case

Ultimately, the dispositive issue before us is one of legal sufficiency – whether the implied duty to represent a client in a manner that comports with professional standards, *alone*, may satisfy the duty element of a claim for breach of a contract for legal services.

In his complaint, Appellant asserted one count, styled as a breach of contract claim, against both Appellees. Appellant alleges the parties executed retainer agreements in which Appellant paid each Appellee $7,500 to represent him in a criminal case. Appellant's complaint did not allege the breach of any express promise(s) under the agreements, but rather, only the

breach[2] of Appellees' implied obligation to provide "legal services in a manner consistent with the profession at large." Complaint, 9/19/2022, at paras. 20, 27. Appellant argues that this implied duty was breached due to Appellees' failure to have all of Appellant's credit for time served applied to his sentence and to seek dismissal of the case based on speedy trial grounds.

Appellant argues that his breach of contract claim was legally sufficient under our Supreme Court's decision in **Bailey v. Tucker**, 621 A.2d 108, 115 (Pa. 1993), and this Court's decision in **Gorski v. Smith**, 812 A.2d 683 (Pa. Super. 2002),[3] which he interprets as holding that a breach of contract action does not have to be founded on the breach of an express contractual duty. Appellant asserts that he was entitled to cast a tort claim as a breach of contract action, giving him the benefit of a doubled statute of limitations period. **See** Complaint, 9/19/2022, at para. 22 ("[A] plaintiff can *always* pursue their [malpractice] case under a contract theory and enjoy the longer four year statute of limitations, at first glance effectively rendering the two year negligence statute [of limitations] obsolete.").[4]

---

[2] Appellant did not attach any written agreements to his complaint.

[3] Appellant did not have the benefit of our recent decision in **Swatt** at the time he briefed and argued his case to this Court.

[4] The limitations period for negligence claims is two years; the limitations period for breach of contract claims is four years. **See** 42 Pa.C.S.A. §§ 5524-5525. "The purpose of these limitations periods is to expedite litigation and thus discourage delay and the presentation of stale claims which may greatly prejudice the defense of such claims. In light of the important purpose served

*(Footnote Continued Next Page)*

The damages sought by Appellant go beyond the retainer amount of $7,500 paid to each Appellee. He asserts in his complaint that, "[a]s a direct and proximate result of the misconduct described herein, [he] has suffered damages including but not limited to economic and non-economic damages in an amount to be fully determined at trial[.]" *Id*., at para. 33. He also sought "consequential damages relating to the defective services described herein which led to incarceration from September 21, 2015 to July 9, 2019." *Id*. Finally, Appellant demanded "compensatory damages" flowing from the conduct of Appellees, as well as "punitive damages[.]" *Id*., at para. 17.

Appellees filed preliminary objections in the nature of a demurrer, contending that Appellant's breach of contract claim was legally insufficient as pleaded because no facts had been alleged that Appellees ever breached a specific contractual term. *See* Preliminary Objections, 1/6/2022, at paras. 30-36. Appellees argued further that Appellant's claim should be construed as one sounding in tort, *see id*., at paras. 37-51, and then barred under the two-year statute of limitations period for such an action. *See id*., at paras. 52-59.[5]

_____

by limitations periods, this Court has held that statutes of limitation are to be strictly construed." *Gustine v. Uniontown Assocs., Ltd. v. Anthony Crane Rental, Inc., L.P.*, 842 A.2d 334, 346 (Pa. 2004).

[5] With respect to Appellant's claim for punitive damages, Appellees stated that it should be stricken with prejudice because, as a matter of law, such damages are not available to remedy a breach of a contractual duty. *See* Preliminary Objections, 1/6/2022, at paras. 60-70. And again, consistent with
*(Footnote Continued Next Page)*

The trial court sustained Appellees' preliminary objections and dismissed Appellant's complaint with prejudice. *See* Trial Court Order, 2/7/2023, at para. 4. In relevant part, the trial court ruled that construing Appellant's breach of contract claim as a negligence claim would be unavailing because the applicable statute of limitations period already had run. *See id*., at para. 2. The preliminary objection in the nature of a motion to strike the punitive damages claim was also sustained. *Id.*, at 3.

In its opinion, the trial court explained that Appellant failed to assert a legally sufficient cause of action for breach of contract based on the facts alleged in his complaint. *See* Trial Court Opinion, 2/7/2023, at 4-7. The crux of the trial court's reasoning was that Appellant had pointed to no "specific contractual term that was breached[.]" *Id*., at 5. Although Appellant had cited *Bailey* and *Gorski* for the proposition that no such express contractual term is needed for a viable breach of contract action, the trial court rejected those authorities as inapposite. *See id*., at 5-6.

The trial court, instead, quoted our Supreme Court's opinion in *Bruno* to explain why Appellant's contract claim sounded in tort rather than contract:

> If the facts of a particular claim establish that the duty breached is one created by the parties by the terms of their contract – i.e., a specific promise to do something that a party would not ordinarily have been obligated to do but for the existence of the contract – then the claim is to be viewed as one for breach of

_____

Appellees' alternative position, any tort claim of professional negligence would be barred by the statute of limitations, further precluding punitive damages. *See id*.

- 5 -

contract. **If, however, the facts establish that the claim involves the defendant's violation of a broader social duty owed to all individuals, which is imposed by the law of torts and, hence, exists regardless of the contract, then it must be regarded as a tort**.

\* \* \* \*

Consequently, **a negligence claim based on the actions of a contracting party in performing contractual obligations is not viewed as an action on the underlying contract itself, since it is not founded on the breach of any of the specific executory promises which comprise the contract**. Instead, the contract is regarded merely as the vehicle, or mechanism, which established the relationship between the parties, during which the tort of negligence was committed.

Trial Court Opinion, 2/7/2023, at 4 (quoting **Bruno**, 106 A.3d at 68-70 (emphases added)).

Further, the trial court cited a string of decisions – unpublished memorandum by this Court, and federal cases applying Pennsylvania law – which declined to apply the principal cases relied upon by Appellant:

> Although **Bruno** did not deal with legal malpractice specifically, post-**Bruno** the majority of Pennsylvania federal courts (as well as in several non-precedential state cases) are finding that **Gorski's** broad interpretation is no longer correct. **See, e.g., N.Y. Central Mutual Ins. Co. v. Edelstein**, 637 F. App'x 70 (3d Cir. 2016) (applying **Bruno's** "specific executory promise" language and declining to read **Bailey's** "implied promise" dicta as binding); **Brenco Oil, Inc. v. Blaney**, 2017 WL 6367893 (E.D. Pa. 2017) (finding that **Edelstein** and **Bruno** foreclose **Gorski's** broad reasoning and that a breach of contract claim requires an allegation of breach of a specific executory promise). Further, courts generally agree that the gist of the action may bar contract claims if the true nature of the duty breached is in tort. **See, e.g., Johnstone v. Raffaele**, No. 2581

- 6 -

> EDA 2019, 2020 WL 6375863 (Pa. Super. Ct. Oct. 30, 2020) (affirming a preliminary objection to a breach of contract claim where the gist of the action against an attorney for negligent preparation of documents and "overall exercise of care" was in tort); *Seidner v. Finkelman*, No. 716 EDA 2017, 2018 WL 4178147 (Pa. Super. Ct. Aug. 31, 2018) (applying the gist of action doctrine and concluding a breach of contract claim could not be sustained where allegations that an attorney failed to exercise ordinary skill and knowledge in excluding insurance as marital assets sounded in tort).
>
> Although not supplying concrete precedent, the non-precedential decisions clearly show a trend of incorporating *Bruno* and rejecting *Gorski's* reasoning, and trial courts have cited the non-precedential opinions as persuasive.

*Lindner v. Wyrick*, 2021 WL 5363324, at * 4 (W.D. Pa. June 30, 2021).

*Id*., at 5-6 (some internal citations omitted).

Relying on these authorities, the trial court reasoned that Appellant had only alleged facts that would support a claim of "professional negligence," a cause of action that sounds in tort. *See id*., at 6. It followed, then, that Appellant had not alleged facts that could support a viable breach of contract claim against Appellees, "as [the complaint] did not allege a breach of a specific duty imposed by the contract." *Id*., at 6-7. Thus, the trial court sustained Appellees' preliminary objections and dismissed the entirety of Appellant's complaint with prejudice. *See id*., at 7.

Appellant timely filed a motion for reconsideration, arguing that the trial court erred in finding *Bailey* and *Gorski* to be inapplicable. He again contended that under those cases, a party may breach a contract "by failing

- 7 -

to perform legal representation services consistent with those expected with the profession at large." Appellant's Motion for Reconsideration, 3/7/2023, at para. 24. The motion was denied, and Appellant timely appealed.

Appellant now ostensibly raises three issues, but his claims may be reduced to a single ground – that the trial court erred as a matter of law by ruling that "the gist of the action doctrine barred a Breach of Contract/Legal Malpractice [claim] against [a] criminal attorney with a contract." Appellant's Brief, at 6 (suggested answers and unnecessary capitalization omitted).[6]

The Majority, citing **Swatt**, has found in favor of Appellant, holding that the trial court erred when it applied the gist of the action doctrine[7] to convert Appellant's breach of contract claim into a tort claim, thereby extinguishing the assumpsit action. **See** Majority Op. at 5. The Majority reasons that the gist of the action doctrine does not bar the assumpsit action because Appellant sufficiently alleged that Appellees "*breached the retainer agreement by failing to provide competent legal services*[.]" **Id.** (Emphasis added).

_____

[6] In sustaining Appellees' preliminary objections in the nature of a demurrer, the trial court found that Appellant's complaint was legally insufficient pursuant to Pa.R.Civ.P. 1028(a)(4). The question of whether a complaint is legally insufficient under that provision involves a pure question of law, subject to a *de novo* standard of review. **See Catanzaro v. Pennell**, 238 A.3d 504, 507 (Pa. Super. 2020).

[7] The trial court's discussion of the "gist of the action" is part and parcel of its analysis of the legal sufficiency of Appellant's pleading. "The gist of the action doctrine serves as a means by which courts categorize claims to maintain the distinction between theories of breach of contract and tort." **See Dittman v. UPMC**, 196 A.3d 1036, 1057 n.4 (Pa. 2018) (Saylor, J., concurring and dissenting).

Our Supreme Court's **Bruno** opinion is dismissed by the Majority on the ground that it did not discuss the enforceability of an implicit duty undertaken by a party to a contract. **Id.**, at 6. **Bailey** and **Gorski** instead were deemed controlling by the Majority because they promote the policy-driven rule[8] that when attorneys undertake a contractual duty to provide competent legal services, clients have the right to enforce such a duty, even when an agreement does not explicitly include such language. **See id**., at 7.

## B.    Bruno *and the Gist of the Action Doctrine*

In **Bruno**, our Supreme Court granted allocator to consider, in part:

> whether a negligence claim brought against an insurer by its insured – for alleged statements made by the insurer's adjuster, and an engineer the insurer had retained, that mold which the insureds discovered while performing home renovations was harmless and that they should continue their renovations – was barred by the "gist of the action" doctrine on the grounds that the true gist or gravamen of the action was an alleged breach of the insurance contract, their homeowners' policy[.]

**Bruno**, 106 A.3d at 50.

The Court held that "the insureds' negligence claim was not barred by the gist of the action doctrine, as the claim was based on an alleged breach of a social duty imposed by the law of torts, and not a breach of duty created by the underlying contract of insurance." **Id.**, at 50-51. To reach this conclusion, the Court discussed in depth how and why the gist of the action

---

[8] It is precisely because the duty alleged arises out of public policy, as will be discussed *infra,* and not from an express contractual undertaking, that the duty alleged to have been breached relates only to tort and not to a contract.

- 9 -

doctrine bars a party from bringing a tort claim for what is, in actuality, a claim for breach of contract. *See generally id*., at 60-70.

The Court began its analysis by reviewing the long history of gist of the action cases in Pennsylvania. Those decisions were, in turn, guided by legal principles derived from the English common law, which for hundreds of years, "recognized no distinction between actions in tort and actions in contract," *id.* at 61, an abandoned position now apparently revived by the Majority in this case and in *Swatt*.

As discussed in *Bruno*, the early English approach proved unworkable. Once it became clear that assumpsit would lie for any breach of contract, but that in some situations there still might be a remedy in tort, the English courts "began to be beset with problems" as they attempted to distinguish tort and contract actions for jurisdictional purposes and to determine available damages. *Id.* Eventually, the English Parliament was compelled to solve those problems by implementing a formal division between actions founded in tort and contract. English courts thereafter had to examine the character of each action to classify it appropriately. *Id.* American courts followed suit by assessing the substance, or "the gist," of each cause of action. *Id.*

The *Bruno* Court summarized the "seminal" Pennsylvania decisions on the subject, many of which dated back to the 1800's. *See id.*, at 61-67. The first of those opinions was *Zell v. Arnold*, 2 Pen. & W. 292, 294 (Pa. 1830). There, the plaintiff contracted with the defendant to build a clover mill and to dig a trench in the bed of a stream running across the plaintiff's land. The

trench was meant to divert the stream to the mill and make the stream level with a dam.  The defendant built the mill and dug the trench, but failed to do so in a manner that made the mill functional.

The plaintiff brought suit, asserting that the defendant's work was done pursuant to a contract, and that the defendant had "negligently, carelessly, and unskillfully, graded the race and water cars and built the mills so inaccurately and for want of due care and skill, that it deprived the plaintiff of the use of the improvements and the land." **Bruno**, 106 A.3d at 62 (quoting **Zell**, 2 Pen. & W., at 294).  The plaintiff was awarded damages by the jury and costs by the court, but the latter award was not permitted in contract actions.  **See id**.

On appeal, the **Zell** Court had to determine whether the trial court had jurisdiction by assessing "the nature of the suit."  **Id**.  In that analysis, the existence of a contract was not dispositive, as the substance of the plaintiff's claim related to whether the defendant had performed contractual obligations in a negligent or careless manner, and not whether the defendant had simply failed to perform contractually required tasks at all.  **See id**.

The **Zell** Court adopted the principle that an action does not sound in contract (assumpsit) simply because the plaintiff accrued damages resulting from the defendant's performance of contractual duties.  **See id.** at 62-63.  Instead, the gist of the action had to be established by the nature of the duty breached, as alleged in the pleadings.  **See id.**  "[*H*]*ence, actions arising directly from an alleged breach of a contractual duty are regarded as being in*

- 11 -

*contract, whereas those based upon an alleged breach of a party's separate 'collateral' duty to perform a contractual obligation with skill and diligence were to be considered as being in tort."* **Id.** at 63.

**Zell** was followed eight years later by **McCahan v. Hirst,** 7 Watts 175, 1838 WL 3224 (Pa. 1838), which clarified **Zell's** holding. **McCahan** established that whenever a plaintiff has alleged a defendant's complete failure to perform contractual duties (a nonfeasance), the action sounds in contract; conversely, if the allegations concern a defendant's negligent breach of a duty which exists independently of the contract (a misfeasance), then the action must sound in tort. **See Bruno**, 106 A.3d at 63 (citing **McCahan**, 1838 WL 3224, at *3).

In **McCahan**, the plaintiff alleged that a bailment contract required the defendant to store cloverseed delivered by the plaintiff. The defendant lost the cloverseed while it was in his custody, and the plaintiff asserted that the defendant had negligently stored his property, entitling him to tort remedies. The **McCahan** Court held that the plaintiff's allegation of negligent storage did not sound in tort because, in substance, the claim was the breach of a specific contractual duty to store the plaintiff's property. **See id**. The action was one in contract, not in tort. **See id**.

Similarly, in **Cook v. Haggarty**, 36 Pa. 67, 1859 WL 8877 (Pa. 1859), the Court again reaffirmed that an action must be classified by the nature of the duty alleged to have been breached. In **Cook**, a contract required the defendant to "safely keep, pasture, and specially care for, and attend to"

plaintiff's horses." **Bruno**, 106 A.3d at 105 (quoting **Cook**, 1859 WL 8877 at *1). The horses were injured while in the defendant's care, and the plaintiff asserted a tort claim, alleging that the damages resulted from the defendant "carelessly, negligently and improperly" caring for the horses. **Id**. (quoting **Cook**, 1859 WL 8877 at *3). Although the plaintiff had framed the action as a tort, the **Cook** Court held that the defendant was permitted to raise contractual defenses because the duty allegedly breached was exactly the same as the duty expressly described in the parties' contract. **See id**. (quoting **Cook**, 1859 WL 8877 at *3).

A consistent result was reached In **Krum v. Anthony**, 8 A. 598, 600 (Pa. 1887), where the Court found that the mere existence of a contract between the parties did not make the action a claim in assumpsit, as the alleged damages resulted from the defendants' negligence in creating a dangerous condition. The plaintiff in that case had contracted with the defendants to maintain a fence between their two properties. The defendants then neglected to maintain the fence and even removed a portion of it which bordered a quarry.

After the plaintiff's horse wandered onto the defendants' property and fell into the quarry, the plaintiff sought to recover the value of the horse, asserting that the defendants had breached their contract through their negligence. The defendants argued that the plaintiff had been contributorily negligent, and the plaintiff countered that such defenses were not available in a breach of contract action. The **Krum** Court held that the existence of the

contract to maintain fencing did not make the case an action in contract because the extent of the parties' respective negligence, and not the defendants' failure to maintain a contractually required fence, was "the very gist of the action." **Bruno**, 106 A.3d at 64 (citing **Krum**, 8 A., at 600).

In **Horney v. Nixon**, 61 A. 1088, 1089 (Pa. 1905), the Court applied the gist of the action to preclude a tort claim for relief rooted in the defendants' non-performance of contractual terms. In that case, the plaintiff sought tort damages for the defendants' failure to supply the plaintiff with specific theater seats, causing plaintiff to suffer "indignity and humiliation." **Bruno**, 106 A.3d at 65 (citing **Horney**, 61 A. at 1089). The **Horney** Court held that the defendants had only undertaken a purely contractual duty to furnish the plaintiff with specific theater seats, so the plaintiff was only entitled to contractual damages, precluding relief in tort. **See id**. (citing **Horney**, 61 A. at 1089).

The **Horney** Court also established the "corollary principle" that "a claim may be brought against a party for actions taken in performance of contractual duties, if those actions constitute a breach of a general duty of care created by law and owed to all the public." **Id**. For example, unlike the implied social obligation for a "common carrier" to serve the public, the duty of a ticket seller is simply to provide the particular ticket paid for by the holder of the ticket:

> It may be stated as an abstract proposition that, where the duty of a common carrier to a passenger is not one which is implied by law by reason of the relation of the parties, but depends solely upon the fact that it has been expressly stipulated for, the remedy is in contract and not in tort; but where the duty is implied by law

by reason of the relation of the parties, or where the passenger sustains an injury by reason of the breach of a duty which the railroad owes to the public in general, the remedy is in tort. **When the gist of the action is a breach of duty, and not of contract, and the contract is not alleged as the cause of action, and <u>when from the facts alleged the law raises the duty by reason of *the calling of the defendant*</u>, as in the case of innkeepers and common carriers, and the breach of duty is solely counted upon, <u>the rules applying to actions [in tort] determine the rights of the parties</u>**.

***Horney***, 61 A. at 1089 (internal quotes and citations omitted, emphasis added).

Our Supreme Court adhered to this same approach in ***Reitmeyer v. Sprecher****,* 243 A.2d 395 (Pa. 1968)**,** wherein the Court recognized a plaintiff's right to assert a tort action based upon a breach of the defendant's duty owed to the public at large, despite that the conduct at issue arose after the defendant failed to fulfill a contractual promise.

In ***Reitmeyer***, a landlord promised a tenant during lease negotiations that a porch would be repaired once the tenant took possession. The porch was not promptly repaired, and the tenant sought tort damages after she was injured by a collapse of the porch. On review, our Supreme Court held that the claim sounded in tort because the landlord's negligence was the gist of the action, as the general duty to make the premises safe for tenants existed independently of the contractual promise to make repairs. ***See Bruno***, 106 A.3d at 65-66 (citing ***Reitmeyer***, 243 A.3d at 398); ***see also Evans v. Otis Elevator Co.,*** 168 A. 2d 573, 574 (Pa. 1961) ("It is not the contract per se

- 15 -

which creates the duty; it is the law which imposes the duty because of the nature of the undertaking in the contract.").

This litany of historical precedent distinguishing contract and tort actions was critical to the holding of **Bruno**. As the **Bruno** Court stated,

> [T]he fundamental principles comprising the gist of the action doctrine have long been an integral part of our Court's jurisprudence and have, at least in two cases - **Horney** and **Reitmeyer** – been employed by our Court for purposes of determining whether a plaintiff may, as a matter of law, bring an action in tort for a defendant's alleged negligent acts committed during the existence of their contractual relationship.
>
> * * * *
>
> The general governing principle which can be derived from our prior cases is that our Court has consistently regarded the nature of the duty alleged to have been breached, as established by the underlying averments supporting the claim in a plaintiff's complaint, to be the critical determinative factor in determining whether the claim is truly one in tort, or for breach of contract . . . . **If the facts of a particular claim establish that the duty breached is one created by the parties by the terms of their contract – i.e., a specific promise to do something that a party would not ordinarily have been obliged to do but for the existence of the contract – then the claim is to be viewed as one for breach of contract. If, however, the facts established that the claim involves the defendant's violation of a broader social duty owed to all individuals, which is imposed by the law of torts and, hence, exists regardless of the contract, then it must be regarded as a tort.**

**Bruno**, 106 A.3d at 68 (footnote and citations omitted, emphasis added).

Respectfully, I find it hard to fathom how the Majority here, and this Court's majority in **Swatt**,[9] can declare that "contract claims never were, and are not, subject to the gist-of-the-action doctrine." Majority Op. at 4 (quoting **Swatt**, --- A.3d.---, 2025 WL 1821998, *55 (Pa. Super. filed July 2, 2025)). The history of the gist of the action doctrine, spanning hundreds of years, shows that the entire point of it is to distinguish between contract and tort claims. **See generally Bruno**, 106 A.3d at 68-69.

The **Swatt** majority tried to distance its opinion from **Bruno** by framing the latter decision as only concerning whether a tort claim could exist when the parties had a contract, and *not* whether plaintiffs had to elect a remedy any time the same conduct amounts to a breach of both a contractual and general duty. By that same token, both the **Swatt** majority and the Majority hold here that the gist of the action doctrine does not allow a trial court to "convert" a nominal breach of contract claim into a tort claim. **See** Majority Op. at 4 (citing **Swatt**, --- A.3d.---, 2025 WL 1821998, *55). None of our history regarding the gist of an action supports the **Swatt** notion that a party does not have to elect between a contract and tort claim when a contract exists, but may assert both causes of action even where it is the same duty alleged to have been breached.

_____

[9] **Swatt** was a 5-4 *en banc* decision by this Court.

The Majority's attempt to distinguish **Bruno** appears to rely on a plain misreading of our law, as **Bruno** cannot be reconciled with the instant Majority's interpretation of that opinion. Like in **Bruno** and the present matter, **Zell** and **Reitmeyer** were cases where the attempt to convert tort actions into contract claims was rejected by our Supreme Court. **Krum** was a case where the Court affirmed that the action only sounded in tort despite there being a contract between the parties. Although contracts existed in these cases, the gist of those actions sounded in tort based upon the duty breached. The Majority and **Swatt** attempt to undue this well-established precedent to permit breach of contract and tort claims to coexist where the alleged duty breaches arises from tort, and the contract merely serves to establish the relationship between the parties during the time the tort was committed.

Therefore, it is error for the Majority here and in **Swatt** to hold that the doctrine cannot apply to require dismissal of tort actions that are improperly cast as breach of contract claims.[10] **Bruno** unequivocally preserves the gist

---

[10] The **Swatt** majority admirably attempted to unearth the historical underpinnings of the doctrine in English law. But regrettably, the **Swatt** majority missed, or failed to reconcile, that point in history when English courts were compelled to distinguish between contract and tort actions; an approach mirrored by our American court system. **See Bruno**, 160 A.3d at 61.

The **Swatt** majority mistakenly stated that the gist of the action "doctrine" was created by a federal district court in 1999, and that it was an inadvertent
*(Footnote Continued Next Page)*

of the action doctrine as a method of distinguishing contract claims from tort claims, and *vice versa*. Accordingly, I once again must voice my dissent to the position taken by the majority in **Swatt**, and to the current Majority, that the gist of the action doctrine cannot be used to bar breach of contract claims.

## C.      The Majority Misreads **Bailey** *and* **Gorski**

The second error the Majority assigns to the trial court is that it improperly relied on **Bruno** in ruling that a viable breach of contract action requires the breach of a specific executory promise. **See** Majority Op., at 6. The Majority reasons that **Bruno** does not concern the enforceability of an implicit duty that a defendant undertakes in a contract, or more specifically here, the implied duty to provide competent legal services. **Id**. This part of the Majority's decision rests entirely on its misinterpretation of a single

_____

departure from centuries of English and American courts which had allowed parties to develop claims and defenses in the alternative. The **Swatt** majority believed the case presented an opportunity for this Court to clarify that the doctrine may not be used to dismiss breach of contract claims. If there were any truth to the **Swatt** majority's notion, it was dispelled by **Bruno**, which held that the gist of the action doctrine must be applied in Pennsylvania to distinguish whether a claim properly sounds in tort or assumpsit.

In my dissent to the majority **Swatt** opinion, I express my view as to why some of the English cases relied upon by the majority did not support its holding. Regardless of any perceived vacillation in historical precedent by **Swatt**, the fact remains, our Supreme Court's most recent and controlling pronouncement on the gist of the action doctrine was expressed in **Bruno**. The duties that may support a contract or tort claim are different, and it is the nature of the duty that defines that difference, and hence, the cause of action.

decision of our Supreme Court, *Bailey*, which this Court ostensibly followed in *Gorski*.

In *Bailey*, our Supreme Court considered two consolidated cases in which the plaintiffs were former criminal defendants who were suing their attorneys for malpractice under theories of both negligence and breach of contract. *See Bailey*, 621 A.2d at 110-12. The attorneys who served as the plaintiffs' criminal counsel sought dismissal pursuant to the statutes of limitation; they also argued generally that criminal defense attorneys should be immune from malpractice claims on social policy grounds. *See id*.

The Court found partial merit in the argument that the practice of criminal law should expose attorneys to less liability than those practicing civil law. The request for immunity was rejected, but the Court set forth different sets of elements for negligent malpractice in the context of criminal and civil law. The Court stated that, to "bring a trespass action against a criminal defense attorney, . . . the plaintiff . . . must establish . . . [r]eckless or wanton disregard of the defendant's interest on the part of the attorney." *Id*., at 115. This differed from the standard given for negligence in a civil malpractice action: "The failure of the attorney to exercise ordinary skill and knowledge[.]" *Id*., at 112.

It was in that context that the *Bailey* Court then briefly discussed the elements of a breach of contract (assumpsit) malpractice action:

**ACTIONS IN ASSUMPSIT**

We now turn our attention to the second type of malpractice issue: an assumpsit claim based on breach of the attorney-client agreement**. This claim is a contract claim and the attorney's liability in this regard will be based on terms of that contract. Thus, if an attorney agrees to provide his or her best efforts and fails to do so an action will accrue.** Of course an attorney who agrees for a fee to represent a client is by implication agreeing to provide that client with professional services consistent with those expected of the profession at large.

**Thus, this cause of action proceeds along the lines of all established contract claims.** It does not require a determination by an appellate court of ineffective assistance of counsel, nor does the client need to prove innocence. However, in anticipation of potential problems it is necessary to comment on the aspect of recoverable damages in such an action; quite simply, **such damages will be limited to the amount actually paid for the services plus statutory interest**. Our reasons for imposing this limitation are the same as those discussed above; to allow consequential damages in such a situation will engender the same problems as those we sought to limit above [in the discussion of actions in trespass for negligent malpractice].

*Bailey*, 621 A.2d at 115 (emphases added).

The present Majority selectively reads the above portion of *Bailey*, quoting only the part that states, "if an attorney agrees to provide his or her best efforts and fails to do so, an action will accrue. Of course, an attorney who agrees for a fee to represent a client **is by implication agreeing to provide that client with professional services consistent with those expected of the profession at large."** Majority Op., at 7. (Emphasis added by the Majority). The Majority omits, or ignores, the prefatory language emphasized by the *Bailey* Court that "[t]his claim is a contract claim and the attorney's liability in this regard **will be based on terms of that contract**.

Thus, **if an attorney agrees** to provide his or her best efforts and fails to do so an action will accrue." **Bailey**, 621 A.2d at 115 (Emphasis added).

The **Bailey** Court indeed referred to an express promise by the attorney to provide his or her best efforts. It was only after stating that basic principle that the Court then remarked further, "[o]f course an attorney who agrees for a fee to represent a client is by implication agreeing to provide that client with professional services consistent with those expected of the profession at large." **Id**. The Court did not hold that this implied obligation, alone, would be enough to sustain a breach of contract claim. It merely observed that an attorney takes on an implied duty of professionalism when engaged by a client to provide legal services. Had the Court intended to overrule all of its prior precedent, it would have discussed the established law requiring the breach of an express contractual undertaking to sustain a breach of contract, and then clarified why that precedent was no longer viable. Indeed, it would have been most unusual for the Court to off-handedly abrogate established law in a single sentence that had nothing to do with the ultimate holding of the case.

The evident focus of the holding in **Bailey** was not on explicating the difference between tort and contract claims arising out of legal malpractice. The plaintiffs' respective malpractice claims were all filed beyond both the applicable two-year limitations period for negligence claims, as well as the period for breach of an oral contract (four years) and a written contract (six years). On that sole basis, the complaints were barred as untimely. **See id**., at 116-17. The **Bailey** Court's reference to an implied duty in contracts for

- 22 -

legal services was completely divorced from its holding, making that portion of the opinion non-binding *dictum*.[11]

In the **Bailey** Court's own terms, there was nothing novel about its description of implied duties for a breach of contract claim. Thus, the **Bailey** Court's allusion to an attorney's implied duty only underscored an already existing proposition that there is a difference between an attorney's failure "to follow specific instructions . . . [in] a specific provision of the contract" and an attorney's failure "to exercise the appropriate standard of care." **Storm v. Golden**, 538 A.2d 61, 66 (Pa. Super. 1988). The former conduct would sound in contract, while only the latter conduct would sound in tort. **See id**.

Regardless, to the extent **Bailey** would permit any legal malpractice tort claim to be cast as a breach of contract claim due solely to an implied covenant of professional competence, such a holding would have later been overturned by **Bruno**. Our Supreme Court held there that the breach of a contractual duty must flow from counsel's deficient performance of an *express* term agreed upon by the parties. **See Bruno**, 106 A.3d at 68-70.

---

[11] The **Bailey** Court did not further detail the nature of the contractual duties that the plaintiffs alleged were breached. Since the elements of a breach of contract for legal services had no bearing on the holding of the case, the Court's definition of the implied contractual duty was *dictum*, with no controlling effect. **See Commonwealth v. Romero**, 183 A.3d 364, 400 n.18 (Pa. 2018) (defining "*obiter dictum*" as a "judicial comment made while delivering a judicial opinion, but one that is unnecessary to the decision in the case and therefore not precedential (although it may be considered persuasive."). Subsequent "repetition does not elevate assertion that are otherwise dictum into binding precedent." **Kane v. State Farm Fire and Cas. Co.**, 841 A.2d 1038, 1048 (Pa. Super. 2003).

Many of our recent decisions post-*Bailey* (of which the Majority makes no mention and of which *Swatt* overrules), have, in line with *Bruno*, declined to find a breach of contract to be sufficiently pleaded where the attorney's asserted duty is an implied promise to provide services consistent with those expected of the profession at large. *See e.g., Corliss v. Lee A. Ciccarelli, PC*, No. 891 EDA 2021 (Pa. Super. filed January 4, 2022) (unpublished memorandum) (emphases added, internal citations omitted); *see also Outerlimits Tech.*, No. 169 EDA 2023, at *14-16 (holding that "action in *assumpsit* was unavailable" in legal malpractice action because Appellant had alleged the breach of counsel's "failure to exercise the requisite level of skill and knowledge," but not the breach of a specific contractual provision or promise).

The federal courts, too, when applying Pennsylvania law, have consistently declined to accept that the duty element of a claim for breach of a contract for legal services may be derived solely from an implied obligation to perform at a minimum level of skill expected of an attorney. *See e.g., Simons*, 587 F.Supp. 3d. at 221-22 (dismissing breach of contract claim because plaintiff did not indicate that he gave counsel "any specific instructions" that counsel "failed to follow"); *Edelstein*, 637 F. Appx. at 73 (quoting *Bruno*, 106 A.3d at 70) (A legal malpractice "claim sounds in negligence unless it is alleged that the party breached one of the specific executory promises which comprise the contract."); *In re Tronox Incorp.*, 616 B.R. 280, 289-90 (Bankr. S.D. N.Y. February 21, 2020); *Edwards v.*

***Thorpe***, 876 F.Supp. 693, 694 (E.D. Pa. 1995) ("When a plaintiff's cause of action is based on an attorney's failure to exercise due care, it will sound in contract only if the attorney fails to follow the client's specific instructions or, by her negligence, breaches a specific provision of the contract."); ***see also Juday v. Sadaka***, No. 19-1643, at *5-6 (E.D. Pa. August 30, 2019) (unpublished decision); ***Lindner***, 2021 WL 5363324, at * 4 (citing cases).

As for ***Gorski***, I find the case to neither be controlling nor persuasive. When presiding *en banc*, prior three-judge panel decisions of this Court may be considered non-binding. ***See McGrath v. Bur. Of Prof'l. and Occup. Affairs, State Bd. Of Nursing***, 173 A.3d 656, 661 n.7 (Pa. 2017) ("[A]n *en banc* panel of an intermediate court is authorized to overrule a three-judge panel decision of the same court.").

Further, the reasoning of ***Gorski*** conflicts with our Supreme Court's holding in ***Bruno***, as well as the long-held distinctions between tort and breach of contract actions that have been recognized in countless cases, including ***Bailey***, the very opinion that ***Gorski*** supposedly follows. ***See e.g., Guy v. Liederbach***, 459 A. 2d 744, 752 (Pa. 1983) (stating "that the causes of action in trespass and assumpsit are distinct," and holding that contract actions for legal malpractice are not viable when predicated on "negligence criteria").

In ***Gorski***, a three-judge panel of this Court interpreted the implied duty alluded to in ***Bailey*** as allowing a client to allege a breach of contract against an attorney without having to identify an express contractual term that had

- 25 -

been breached by counsel's performance. *See Gorski*, 812 A.2d at 694 ("Hence, a breach of contract claim may properly be premised on an attorney's failure to fulfill his or her contractual duty to provide the agreed upon legal services in a manner consistent with the profession at large."). The panel's holding in *Gorski* was erroneous, as it was based on a misreading of *Bailey*. As established above, the *Bailey* Court intended to *maintain* the distinction between malpractice claims sounding in contract and tort, such that they would each remain separate causes of action with mutually exclusive statutes of limitations and available damages. *See Bailey*, 621 A.2d at 115-17.

The implied duty referred to in *Bailey* was not meant to signal a reworking of contract law, or a conflation of contract and negligence concepts. Recognizing (in *dictum*) that all retainer agreements impliedly require counsel to perform at a professional standard is a far cry from holding (for the first time in Pennsylvania's history) that a breach of that implied duty alone is cognizable in assumpsit. Had our Supreme Court intended for the law of contract to subsume tort legal malpractice claims in that manner, it would have said so. Even if the *Gorski* panel had properly construed *Bailey* (which it did not), we would still have to find that our Supreme Court's more recent decision in *Bruno* has superseded its earlier *Bailey* opinion.[12]

---

[12] Numerous federal courts have noted the incompatibility between *Gorski* and our Supreme Court's holding in *Bruno*. *See e.g., New York C. Mut. Ins. Co. v. Edelstein*, 637 Fed. Appx. 70, 74 (3d Cir. 2016) (unpublished decision); *Tronox*, 616 B.R., at 289. I agree with the federal courts that *Gorski* is not good law.

### D. Implied Duties, Alone, Cannot Support an Action in Assumpsit

It bears repeating that the dispositive issue in the present case is whether Appellant alleged sufficient facts in his complaint to sustain the legal duty element of a breach of contract action where only an implied duty has been alleged to have been breached.

"A complaint must, at minimum, set forth the facts upon which a cause of action is based." **Burnside v. Abbot Lab.**, 505 A.2d 973, 980 (Pa. Super. 1985).[13] "[E]very contract imposes on each party a duty of good faith and fair dealing in its performance and its enforcement." **Kaplan v. Cablevision of PA., Inc.**, 671 A.2d 716, 722 (Pa. Super. 1996) (*en banc*) (quoting Restatement (Second) of Contracts, § 205(d)); **see also Obermayer, Rebmann, Maxwell & Hippel, LLP v. J.P. Mascaro & Sons**, No. 1601 EDA 2021 (Pa. Super. filed April 18, 2022) (unpublished memorandum) (same).

We also have held that "[w]ith respect to a legal malpractice claim based on breach of contract," an agreement for legal services carries with it an implied duty on the part of the attorney to represent the client in a manner that comports with professional standards:

> [T]he attorney's liability must be assessed under the terms of the contract. Thus, if the attorney agrees to provide . . . her best efforts and fails to do so, an action in *assumpsit* [breach of contract] will accrue. An attorney who agrees for a fee to

---

[13] "It is well-established that three elements are necessary to plead a cause of action for breach of contract: (1) the existence of a contract, including its essential terms, (2) breach of the contract; and (3) resultant damages." **Meyer, Darragh, Buckler, Bebenek & Eck, P.L.L.C. v. Law Firm of Malone Middleman, P.C.**, 137 A.3d 1247, 1258 (Pa. 2016)).

represent a client is by implication agreeing to provide that client with professional services consistent with those expected of the profession at large.

*Outerlimits Tech., LLC v. Cozen O'Connor*, No. 169 EDA 2023 (Pa. Super. filed December 8, 2023) (unpublished memorandum) (quoting *Dougherty v. Pepper Hamilton LLP*, 133 A.3d 792, 796 (Pa. Super. 2016)).

*Whether a breach of this implied duty **alone** may enable a claim to sound in contract (assumpsit) is another matter entirely.* As held in *Bruno*, a breach of contract claim must be founded on the breach of "any of the **specific executory promises** which comprise a contract." 106 A.3d at 70 (emphasis added). "[I]f the facts of a particular claim establish that the duty breached is one created by the parties by the terms of their contract – *i.e.*, a specific promise to do something that a party would not ordinarily have been obligated to do but for the existence of the contract – then the claim is to be viewed as one for breach of contract." *Id*., at 68. "[M]erely because a cause of action between two parties to a contract is based on the actions of the defendant undertaken while performing his contractual duties, this fact, alone, does not automatically characterize the action as one for breach of contract." *Id*., at 63.

By contrast, the negligent performance of a contract is founded on a breach of a social duty "which is imposed by the law of torts and, hence, exists regardless of the contract[.]" *Id*. at 68. Courts have recognized for many years that a party to a contract may breach such a duty arising from the establishment of a contractual relationship, but that the resulting cause of

action sounds in tort (negligence) because it does not arise from a breach of a duty created by the contract itself.  *See id*. at 70 (citing *Reitmeyer*, 243 A.2d at 397 (holding that lessee could only sue landlord in tort for the defective condition of the premises despite that the parties had executed a lease and the landlord had promised to make the needed repairs)); *see also Zell*, 2 Pen. & W. at 294 (explaining that where a claim is not based on "a failure to perform" under the terms of the contract, but rather "a failure to perform in a *workmanly manner*" under a duty implied by law, the action sounds in tort, which is "collateral" to an action in assumpsit).

In the absence of a duty that arises from an express term of a contract, a breach of contract claim is insufficient as a matter of law.  This logically follows from the premise that "[i]mplied duties cannot trump the express provisions in the contract."  *See John B. Conomos, Inc. v. Sun Co., Inc. (R&M)*, 831 A.2d 696, 706 (Pa. Super. 2003).  "Unequivocal contractual terms hold a position superior to **_any_** implied by courts, *leaving implied covenants to serve as gap filler*."  *Id*. (Emphasis added).

"Tort actions lie for breaches of duties imposed by law as a matter of social policy, while contract actions lie only for breaches of duties imposed by mutual consensus agreements between particular individuals."  *Bash v. Bell Tel. Co.*, 601 A.2d 825, 829 (Pa. Super. 1992).  Accordingly, where the law imposes a duty or obligation on a party to a contract by implication, the implied term cannot require something of the party which has "not [been] explicitly contemplated by the contract."  *Conomos*, 831 A.2d at 706.

By the same token, the common law "doctrine of necessary implication . . . will imply an agreement by the parties to a contract to do and perform those things" which would be necessary to carry out the purpose of the contract. ***Palmieri v. Partridge***, 853 A.2d 1076, 1079 (Pa. Super. 2004). Such implied terms do "not create a separate duty of fairness and reasonableness which can be independently breached." ***Hanaway v. Parkesburg Group, LP***, 168 A.3d 146, 157 (Pa. 2017) (quoting 13 Pa.C.S.A. § 1304 (cmt 1)); ***see also Glassmere Fuel Service, Inc. v. Clear***, 900 A.2d 398, 403 (Pa. Super. 2006) (declining to interpret contract as containing an implied or necessary obligation for defendant to provide specific financing services, where "such an obligation [did] not appear on the face of the Agreement itself . . . [or] contain any provisions which suggest that financing was even contemplated by either party."); ***Creeger Brick and Bldg. Supply Inc. v. Mid-State Bank and Trust Co.***, 560 A.2d 151, 155 (Pa. Super. 1989) (holding that breach of contract action was properly dismissed as legally insufficient because plaintiff only asserted breach of an implied duty for a bank to deal with a borrower in good faith, and no breach of the express contractual terms were alleged).

The practical effect of these prevailing rules is that, whether or not an *implied* duty is framed as one arising from the law of tort or contract, the breach of such a duty does not give the non-breaching party an *independent* cause of action in contract. Rather, a breach of an implied contractual duty, or implied covenant or obligation, must be *subsumed* within a claim of breach

of an express contractual term. *See generally LSI Title Agency, Inc. v. Eval. Servs., Inc.*, 951 A.2d 384, 391 (Pa. Super. 2008); *see also Simons v. Royer Cooper Cohen Braunfeld LLC*, 587 F.Supp.3d 209 (E.D. Pa. February 28, 2022).

To be sure, courts may consider an implied duty, or covenant, as part of a contract, but they may only do so "to harmonize the reasonable expectations of the parties with the intent of the contractors and the terms in their contract." *Conomos*, 831 A.2d at 707; *see also Stamerro v. Stamerro*, 889 A.2d 1251, 1259 (Pa. Super. 2005) (same); *Post v. Anderson*, No. 2183 EDA 2022 *11 (Pa. Super. filed July 19, 2023) (unpublished memorandum) (same).

This is not to say that a breach of contract action may never arise, in part, from an implied duty. It is just that an implied duty may only support a breach of contract action when necessary to ascertain a party's specific contractual obligations. *See generally Jamison v. Concepts Plus, Inc.*, 552 A.2d 265, 269 (Pa. Super. 1988) (holding that parties' implied duty to perform contract with "reasonable measures" and "due diligence" were relevant in breach of contract action insofar as the implied duties shed light on what the contract specifically required of the parties); *see also Somers v. Somers*, 613 A.2d 1211, 1215 (Pa. Super. 1992) (holding that a breach of contract claim was sufficiently pleaded, and recognizing an implied obligation for defendant to act in good faith and with due diligence in the performance of an express contractual duty in an employment agreement to calculate

plaintiff's share in proceeds of the business); *Goldstein v. Elk Lighting, Inc.*, 2013 WL 790765 (M.D. Pa. March 4, 2013) (alleged breach of contract claim, based in part on implied covenant of good faith and fair dealing, was sufficient because the implied duty fleshed out prohibited conduct for a party performing express contractual duty to pay a retirement benefit).

Accordingly, it is and has been firmly established in Pennsylvania law that while there are implied obligations in every contract; it is equally evident that *a claim for breach of contract cannot be based solely upon an implied obligation*. The breach of an implied obligation is only relevant in a contract action when needed to clarify the terms of an express contractual undertaking. An implied obligation is a "gap filler" in a breach of contract action, to be used as an interpretative tool when the express terms of a contract do not specify how contractual duties are to be performed.

### E. Appellant's Claim is Rooted in Tort, not Contract

In the present case, Appellant's complaint contained a single count against both Appellees, nominally asserting a breach of their contracts for legal services. Appellant did not attach any contract to his complaint, instead alleging only that Appellees breached a contractual duty, implied by law, to provide legal services in a manner consistent with professional standards. *See* Complaint, 9/19/2022, at paras. 21, 27. It was alleged further that Appellees "failed to adequately perform with regard[] to the applicable standards of competence and diligence required in the field and profession of law" when they failed to raise issues pertaining to Appellant's right to a speedy

trial and his right to credit for time served. *Id*., at paras. 28-29. Appellant did not allege that these specific tasks were the subject of any express term in the retainer agreements. *See id*.

Plainly, Appellant has failed to assert facts which would establish the elements of a legal malpractice claim for breach of contract.[14] For such a claim to be viable under the framework of *Bruno* and the long line of cases that preceded it, the duty owed by Appellees would have to flow from an express term in their contracts for legal services. *See Bruno*, 106 A.3d at 70 (requiring breach of contract action to be based on "specific executory promises which comprise a contract."); *see also Meksin v. Glassman*, No. 1174 EDA 2018 (Pa. Super. filed May 21, 2019) (unpublished memorandum) (holding that trial court properly dismissed breach of contract malpractice claim where "the allegations implicated [counsel's] overall exercise of care and professional judgment rather than compliance with the terms of his agreement to provide legal services."). Since no breach of any express term(s) was mentioned in Appellant's complaint, I would conclude that the trial court correctly sustained Appellees' preliminary objections in the nature of a demurrer. The duty alleged to have been breached sounds only in tort. In addition, while recognizing that Appellees had implied contractual duties, I

_____

[14] It should not go unnoticed that, while not controlling under our case law to distinguish contract from tort actions, some of the damages sought by Appellant may only be recovered in tort. Appellant pled damages in the nature of economic and non-economic damages, consequential damages relating to the defective services that led to incarceration, compensatory damages, and punitive damages.

would stop short of easing the established pleading requirements of a breach of contract claim, as the Majority does, by no longer requiring that an implied duty must be pleaded in conjunction with the alleged breach of an express contractual duty.

In sum, the trial court properly dismissed Appellant's contract action. The present Majority's opinion, as well as the majority's opinion *Swatt*, impermissibly erases nearly 200 years of controlling precedent distinguishing between contract and tort actions, and the role that implied conditions play in each of those actions. Thus, I respectfully dissent.

President Judge Emeritus Panella and Judge King join the Dissenting Opinion.